## Lair *et al. versus* Hunsicker.

The Orphans' Court, by receiving a petition for an inquest upon the real estate of a decedent, and thereupon awarding an inquest and consummating proceedings in partition, thereby decides that the petitioner was a proper party to the proceedings; and such adjudication cannot be questioned in a collateral matter, by a stranger to the title of the decedent.

As against an intruder, or one who shows no title, it is immaterial whether the legal title belongs absolutely to the holder thereof, or whether he holds it in trust for another.

Where an attorney purchases lands in his own name, the nature and extent of his interest can only be questioned by his client, or those claiming under the client.

It is not necessary to show the title out of the Commonwealth, as against an intruder; it is sufficient if the plaintiff show a right of entry.

ERROR to the Common Pleas of *Montgomery county.*

This was an action of ejectment brought by Joseph W. Hunsicker, Esquire, against George Law and Enos Beam, to recover 12 acres and 18 perches of land. The land in dispute consisted of two tracts or parcels, the one containing 9 acres, and the other 3 acres and 18 perches. The larger tract was conveyed on the 19th January, 1791, by Martin Reeker and wife to John Sower, and he again on the 11th February, 1797, conveyed the same to George Garner, who, on the 13th May, 1797, sold by deed to Isaac Kolb. The plaintiff proved that Kolb sold the same land to Lawrence Ludenburg, and that Ludenburg purchased the 3 acres from John Martin, and that he lived on and claimed the premises as his own. No deed could be found from Kolb or Martin to Ludenburg. On the 1st April, 1812, Ludenburg conveyed the premises by deed to Susanna Beaver and her son, Abraham Beaver. They continued to occupy it as tenants in common. Abraham lived there for ten or eleven years, and then removed. Susanna resided there until 1835 or 1836, and then went to live with her son-in-law in the same neighbourhood, at which place she died in 1847. The plaintiff alleged that Abraham and his mother continued to hold it as tenants in common, up to the time of her death; while the defendant contended, and endeavoured to prove, that there had been a parol partition and a severance in the occupation.

One of the daughters of Susanna Beaver had been intermarried with Henry Shade, but she died prior to her mother's decease, leaving several children. Henry Shade administered upon the estate of Susanna Beaver, and also presented his petition to the Orphans' Court, for an inquest to make partition of Susanna Beaver's undivided interest in the premises in dispute. The inquest was awarded, a valuation of the land returned, and under the same proceedings the land was sold by the administrator to

Uriah B. Shade, for $100.   This sale was confirmed by the court, and a deed executed to the purchaser, dated 12th March, 1849.

The heirs of Susanna Beaver resided out of the county, except Uriah B. Shade, and the various rules and notices in the proceedings, under the order and direction of the court, were published in newspapers of the county.

To August Term, 1851, Uriah B. Shade brought an action of partition in the Common Pleas against Abraham Beaver, in which a judgment was rendered for the plaintiff, and under proceedings had therein, the land was valued at $1429, and both parties refusing to take, the whole lot, was sold under the order of the court, by the sheriff to Hunsicker, the plaintiff in this case, for the sum of $21.   A deed was executed and acknowledged for the same on the 19th May, 1853.

Mr. Hunsicker is an attorney of the court, and, as counsel of Uriah B. Shade, conducted all the proceedings in the action of partition.

The defendants gave no evidence of any title, but relied upon the invalidity of that of the plaintiff, for the following reasons:—

1. That plaintiff did not show title out of the Commonwealth.

2. That he did not even trace title to the person who last died seised.

3. That he showed no title at all in Ludenburg to more than 7 acres of the 12 acres 18 perches.

4. That there had been a parol partition between Susanna and Abraham Beaver, and that at her death they were seised of their portions in severalty.

5. That the Orphans' Court had no jurisdiction to make the partition of the estate of Susanna Beaver on the petition of the husband of her daughter who died before her mother.   That the act gives the Orphans' Court "*power* on application of the *widow* or any *lineal descendant* of decedent *having an interest in the real estate*," to award an inquest, &c., &c.   That in this case the Orphans' Court had no power over the subject-matter, the party petitioning having no interest whatever in the land—that the whole proceeding was therefore *coram non judice* and vested no title in the purchaser, Uriah B. Shade, and that this want of jurisdiction over the case, and the subject-matter of it, appearing on the face of the petition, &c., the C. P. were not bound by the decree.

6. That Mr. Hunsicker, the attorney of Shade, acquired no title by virtue of his purchase, but that Shade is the owner of any interest which passed under the sheriff's deed.   That there is an outstanding title in Shade which he may enforc eagainst the plaintiff.

The court below (SMYSER, P. J.) charged the jury as follows:

" This is an action of ejectment brought to recover the possession of a tract of about twelve acres of land in Gwynedd town-

[Lair *et al. v.* Hunsicker.]

ship in this county, which the plaintiff claims under the following title.

" On the 19th January, 1791, Martin Reeker and wife sold the larger parcel of the land in controversy to John Sorver, who again conveyed to George Garner on the 11th of February, 1797; and the latter on the 13th of May, of the same year, sold to Isaac Kolb, as per the deed in evidence. The next link in the chain of paper title, viz., the deed from Kolb to Lawrence Ludenburg, is wanting, there being no record of it, and the original being lost, or at least not in the power of the party to produce. To supply its place, plaintiff has given evidence that Ludenburg bought the same property of Isaac Kolb, lived on it, occupied and used it as his own for a number of years after he so purchased, and finally sold it, together with another small tract which he bought of John Martin (and which the witnesses think together make the tract in dispute), to Abraham Beaver and Susanna Beaver on the 1st of April, 1812. If the jury find these facts to be as alleged, they are sufficient to raise a presumption of a conveyance which, if not rebutted, will dispense with the actual production of the deed, especially after this lapse of time, and in the absence of any proof to show that Isaac Kolb, the presumed grantor, ever set up any adverse claim or challenged in any way Ludenburg's right. The plaintiff then showed the death of Susanna Beaver and the granting of letters of administration on her estate on the 11th of June, 1847, by the register of Montgomery county. He then showed the record of partition proceedings in the Orphans' Court of this county, held pursuant to authority given by the Act of 13th March, 1847, (*P. L.* 319), in relation to the undivided half of Susanna Beaver in these premises, resulting in a sale thereof to Uriah B. Shade, by her administrator, under an act of the Orphans' Court; and a deed for the same by the administrator to the purchaser, by virtue thereof, dated March 12, 1849.

" The plaintiff then showed the record of an action of partition in the Court of Common Pleas of Montgomery county to No. 60, of August 7th, 1851, between Uriah B. Shade, plaintiff, and Abraham Beaver, defendant, seeking to have partition of these premises made between the parties as tenants in common, in which, on the 23d October, 1852, there was a judgment *quod partitio fiat* and a writ *de partitione facienda* awarded, which accordingly issued to No. 13, February T. 1853; the property was appraised undivided by the inquest, and none of the parties appearing to take it at the valuation, it was sold by order of court, in conformity with the provisions of the Act of Assembly, and the plaintiff became the purchaser. The sale so made was confirmed, and pursuant to the order of the court, a deed was made to the purchaser for the premises, dated and acknowledged May 19th, 1853. The plain-

[Lair *et al. v.* Hunsicker.]

tiff then showed the possession of defendants, by the writ and return.

" Then followed the parol testimony of John H. Boas, John Jenkins, John B. Garner, and Benjamin Kolb, called by plaintiff, and John B. Garner re-called by defendants; in which, besides the facts in relation to Ludenburg's purchase and possession, the struggle between the parties was mainly on the part of the plaintiff to show that the tenancy in common created between Abraham and Susanna Beaver by the deed to them in 1812, subsisted without any partition, ouster, or anything else to convert it into a severalty, until the time of Susanna Beaver's death; and on the part of defendants, to show that there had been a parol partition between Abraham and Susanna Beaver, followed by several possession, by means of which the tenancy in common was converted into one in severalty at the time of her death; and that therefore the partition proceedings in the Orphans' Court were erroneous and void, and vested no title in Uriah B. Shade, the purchaser, under whom plaintiff claims, or at least no title as tenant in common, so as to entitle him to institute and maintain the subsequent action of partition in the Common Pleas.

" As this part of the testimony refers to facts upon which you must pass, I will recapitulate it in your hearing, that you may have it fresh in your memories. (Here the court read the evidence from their notes.)

" The defendants have not attempted to show any title in themselves, but stand on their possession, and rely on the insufficiency of the title shown by plaintiff, and on an alleged better outstanding title in a third party.

" Several questions arise on the evidence, which I will proceed to consider.

" 1st. The defendants contend that the proceedings in the Orphans' Court for the partition or valuation of the undivided interest of Susanna Shade in these premises, were *coram non judice,* beyond its jurisdiction, and therefore void, and vested no title in Uriah B. Shade to such undivided moiety. The foundation of this position is that the petitioner for the order of inquisition or valuation, Henry Shade, had no title under the intestate laws to any part of Susanna Beaver's real estate, he being the surviving husband of a deceased daughter who died in the lifetime of her mother.

" Granting that he stood totally without interest, I still cannot agree with the defendants' counsel in this position.

" My opinion is that the heirs of Susanna Beaver, not having, pending the proceedings, in any wise disputed, gainsayed, or denied the petitioner's title, are absolutely concluded and estopped from controverting his right or the decree of the Orphans' Court establishing it. They might have denied his title as an heir or

[Lair *et al. v.* Hunsicker.]

tenant in common, and, if necessary, had it decided in an action of ejectment in the Common Pleas, according to the course pointed out in Mehaffy *v.* Dobbs, 9 *Watts* 363; but having, by their silence, admitted it, they are as much concluded as they would be by a confession of the joint tenure in a common law action of partition—in which such admission would be absolutely conclusive. The case of Herr *v.* Herr, 5 *Barr* 430–1, is exceedingly strong and emphatic on this point, and shows that all the title of the heirs of Susanna Beaver became, by the proceedings in the Orphans' Court, vested in Uriah B. Shade.

"Again. The Orphans' Court undoubtedly had jurisdiction of the subject-matter. They had a right to hear and determine any application made to them to have partition of the lands of the decedent; and it is this that determines the question of jurisdiction: (6 *Peters* 709.) The utmost then that can be charged is an erroneous exercise of authority by the Orphans' Court, which is not examinable in a collateral proceeding : See Act of 29th March, 1832, S—2 *P. L.* 190; also McPherson *v.* Cunliffe *et al.*, 11 *S. & R.* 430 *et seq.*; Snyder *v.* Markel, 8 *Watts* 418; Painter *v.* Henderson, 7 *Barr* 52; Lockhart *v.* John, *Idem* 138; Snevily *v.* Wagner, 8 *Barr* 402.

"All these cases show that a proceeding to have partition in the Orphans' Court, is a proceeding *in rem ;* that it is the *status* of the property, the fact of the owner dying seised and intestate, that gives jurisdiction; and that no error in the judgment of a court of competent jurisdiction, no matter how gross, and although palpable on the record itself, can be revised or corrected by another court collaterally.

"2. The defendants further contended that Joseph Hunsicker, the plaintiff, having been the attorney of Uriah B. Shade to conduct the proceedings in the action of partition, could not become the purchaser, but that such purchase is against the policy of the law and enures to the benefit of his client; that, therefore, he has in equity no title; and the title remains in Uriah B. Shade; and that, therefore, a better title being shown to be outstanding, plaintiff cannot recover.

"The answer to this is, that although such would be the case as between plaintiff and Shade, or those claiming under him, the defendants being, for aught that appears, mere trespassers and intruders, are not at liberty to set up such title to defend their own tortious possession. They are strangers to any trust or relation in the nature of a trust subsisting between the client and his attorney, and cannot defend on the ground that the purchase was in violation of such trust and confidence.

"See Parker *v.* Lee, 5 *Whart.* 343; Huston *v.* Wickersham, 8 *Watts* 522; McHenry *v.* McCall, 10 *Watts* 470; Heath *v.* Knapp, 1 *Barr* 482; moreover, before Uriah B. Shade himself could re-

[Lair *et al. v.* Hunsicker.]

cover the property from his attorney in disaffirmance of the sheriff's deed to the latter, it would be necessary for him to repay or tender to him the amount of purchase-money paid by the latter; because such a transaction, although contrary to the policy of the law, is not a wilful fraud so as to involve a forfeiture of the consideration-money paid. I take it, therefore, that before these defendants can be permitted to invoke the aid of Shade's equity, they must perfect his title by a payment or tender; the rule being that outstanding title in a third party, to avail the defendant, not claiming under it, must be an available one on which the asserted owner might recover in ejectment: Thomas *v.* Wright, 9 *S. & R.* 87. The asserted owner, then, could not have recovered without such repayment; and therefore defendants, before they can call in the aid of his title successfully, must do the same. This they have not done. I have only further to remark, on this point, that the cases of Leisenring *v.* Black, 5 *Watts* 304, Hockenbury *v.* Carslile, 5 *W. & S.* 350, Galbraith *v.* Elder, 8 *Watts* 100, Henry *v.* Raiman, 1 *Casey* 359, cited by defendants' counsel, are all cases in which the equity of the client was sought to be enforced directly between the parties or their privies. None of them present the case of a stranger seeking to bolster up a defective title by its aid.

"3. The defendants object to the plaintiff's right to recover on the title he has exhibited, because he has not shown title out of the Commonwealth.

"This, we are of the opinion, it was unnecessary for him to do— it is enough for him, as against defendants, who show or pretend no title, to show a right of entry. Now, if the jury find that Abraham and Susanna Beaver, by themselves or their tenants, had the notorious and indisputed possession of the premises for twenty-one years and upwards, to wit, from 1812 to 1847, according to the testimony of John H. Boas, under a claim of title founded on the Ludenburg deed, that would establish a right of entry in them; and as the plaintiff unites in himself the right and title of both Abraham and Susanna Beaver, their right of entry becomes his also. Does he unite the titles of both in himself? I answer he does; Abraham's, because, on the principle of Herr *v.* Herr, already cited, the latter is concluded by the proceedings in the action of partition in the Common Pleas; and Susanna's, because of the same reason. As already shown, all the right of her heirs at law became vested, by virtue of the proceedings in the Orphans' Court, in Uriah B. Shade, and in his turn became vested in the present plaintiff, subject to his client's equitable right to claim the benefit of the purchase as enuring to his use, on repayment of the price paid.

"The remaining questions are pretty much matters of fact for your determination.

"Are the premises described in the writ the same as those con-

[Lair *et al. v.* Hunsicker.]

veyed by the deed from Ludenburg? Did the Ludenburg deed, besides the Martin tract, convey the same identical premises mentioned in the prior deeds, notwithstanding the discrepancy in the description of the number of acres contained?

" The premises being the same in identity and extent, did Abraham and Susanna Beaver continue to hold and use them undivided as tenants in common up to the time of the death of the latter, or was there a parol partition made in her lifetime with corresponding possession, or an ouster, or a separate and exclusive occupancy of the whole or part of the premises by either? In the former case, there is nothing in law to prevent the plaintiff's recovery. In the latter case, all the proceedings in the Orphans' Court and Common Pleas, in evidence, would confer no title on plaintiff or Uriah B. Shade, under whom he claims, and your verdict would have to be for defendants, because then the foundation of both proceedings would be taken away, and the title reared upon it would of course fall also."

The verdict was for the plaintiff, and judgment entered upon the finding.

The defendants sued out this writ, and relied on the following specification of errors.

The court erred in charging as follows:

1st. " That all the title of the heirs of Susanna Beaver became by the proceedings of the Orphans' Court vested in Uriah B. Shade." The Orphans' Court undoubtedly had jurisdiction of the subject-matter.

2d. That "the defendants being, for aught that appears, mere trespassers and intruders, are not at liberty to set up such title to defend their own tortious possession"—and also, "None of them" (the cases referred to as cited by defendants' counsel) "present the case of a stranger seeking to bolster up a defective title by its aid."

3d. "That before these defendants can be permitted to invoke the aid of Shade's equity, they must perfect his title by a payment or tender."

4th. " The defendants object to the plaintiff's right to recover on the title he has exhibited, because he has not shown title out of the Commonwealth." " This it was unnecessary for him to do. It is enough for him, as against defendants, who show or pretend no title, to show a right of entry."

5th. " Did the Ludenburg deed, besides the Martin tract, convey the same identical premises mentioned in the prior deeds, notwithstanding the discrepancy in the number of acres contained? The premises being the same in identity and extent, did Abraham and Susanna Beaver continue to hold and use them undivided as tenants in common up to the time of the death of the latter, or

[Lair *et al. v.* Hunsicker.]

was there a parol partition made in her lifetime with correspond-
ing possession or an ouster, or ·a separate and exclusive occupancy
of the whole or part of the premises by either ?   In the former
case, there is nothing in law to prevent the plaintiff's recovery."

*Fox*, for plaintiffs in error.—The Orphans' Court derives its
power to make partition of the lands of a decedent from the Acts
of Assembly.   The petition must be by the widow or lineal
descendant, " *having an interest in such real estate.*"   The court
has no power in any other case.   It is the petition of such a per-
son that gives the jurisdiction; and they can have no jurisdiction
unless brought before them in the mode prescribed by the statute.
Henry Shade's petition showed upon its face that he was not a
descendant of the decedent, and had no interest in her real estate.
The heirs have done nothing to estop them; nor was it proved that
any knew of the proceedings except Uriah Shade.

2.  There was no evidence that defendants were "intruders,"
"trespassers," or "strangers;" or that they "pretended no title."
These expressions were calculated to mislead and prejudice the
minds of the jury.   The law presumed the defendants to have a
perfect title.   They were not bound to show any, but had a right
to rely upon the long and well-established principle, that the
plaintiff must show a complete title in himself.

3.  The plaintiff was counsel for Shade, and must show *affirma-
tively* that he purchased with his client's consent.   The principle
of law is stated in Hall *v.* Hallett, 1 *Cox* 134 : " Upon principles
of policy, no attorney shall be permitted to purchase anything in
litigation, of which litigation he has had the management."   This
doctrine is fully recognised by Leisenring *v.* Black, 5 *Watts* 394 ;
Hockenbury *v.* Carlisle, 5 *W. & S.* 350 ; Galbraith *v.* Elder, 8
*Watts* 100 ; Reid *v.* Stanley, 6 *W. & S.* 369 ; Henry *v.* Raiman,
1 *Casey* 359.

4.  The instruction that the plaintiff was not bound to show title
out of the Commonwealth, was erroneous.   If there had been evi-
dence that the defendants neither had nor pretended to have any
title, the position would be correct; but the court and jury were
bound to presume that they had a perfect title.   Nor was there
any evidence that parties claimed to derive their rights from a
common source.   In all other cases the defendant must show the
title out of the Commonwealth, and trace his own right back to
him who last died seised.

*Boyd*, for defendant in error.—1. The Orphans' Court clearly
had jurisdiction of the *subject-matter*, and consequently the decree
confirming the sale, cannot be inquired into collaterally.   Such is
the express terms of the Act 29th March, 1832, § 2.   The case of
Herr *v.* Herr, 5 *Barr* 429, is decisive of this, and the cases cited

by his Honour, Judge SMYSER. These cases have never been overruled, or even doubted. The plaintiff showed at least a *prima facie* title, and that should prevail against the defendants, who show no title at all. The sale was in 1848, and it is fair to presume that the heirs got the proceeds of the sale, and are satisfied with it. And the time for an appeal having passed, the question should be considered at rest.

2. The instruction complained of in this assignment is in relation to the alleged fiduciary relation between Shade and Hunsicker, and was not given as a binding direction to the jury. If the defendants were prejudiced by this instruction, their remedy was a motion for a new trial on this ground, but this was not done. The judge had the right to instruct the jury, that upon the whole case the plaintiff was entitled to recover: Faust *v.* Ross, 1 *W. & S.* 501.

3. It is a sufficient answer to this assignment and the argument urged in support of it, to say, that if Hunsicker's purchase enured to the benefit of his client Shade, still he could maintain the ejectment, and if he held as trustee before, he would so after the recovery. And as the defendants do not claim to hold under Shade and under this alleged trust, they cannot set it up to defeat both the title of the trustee and *cestui que* trust. The contest is not between the counsel and client, and therefore Henry *v.* Raiman, 1 *Casey* 354, does not apply.

Even if the defendants claimed under Shade, they could not recover without paying into court the amount of the purchase-money, as there is no allegation of fraud, which would render it unnecessary. The cases cited by the court are fully conclusive, and we rest the point upon them.

4. As against the defendants, who show no sort of title, it was unnecessary for the plaintiff to show title out of the Commonwealth. It was sufficient to show a right of entry: Milligan *v.* Dickson, 1 *P. C. C. R.* 435; Hylton *v.* Brown, 1 *W. C. C. R.* 204; Allen *v.* Lyons, 2 *Id.* 475; West *v.* Pine, 4 *Id.* 691; Riddle *v.* Murphy, 7 *S. & R.* 230.

The opinion of the court was delivered by

KNOX, J.—We are entirely satisfied with the instructions given by the learned judge who presided upon this trial.

The plaintiff in error alleges: 1st. That the proceedings in the Orphans' Court were void, because the petitioner for the partition had no interest in the estate. 2d. That the plaintiff below ought not to recover, because he was acting as attorney when he purchased the land in dispute.

It is a sufficient answer to these allegations to say: 1st. That the Orphans' Court, by receiving the petition of Henry Shade, and by the subsequent proceeding, decided that the petitioner Henry

[Lair *et al. v.* Hunsicker.]

Shade was a proper party to the proceeding, and this decision cannot be questioned in a collateral proceeding by a stranger to the title of the decedent Susanna Beaver. 2d. It matters not to an intruder, or one who shows no title, whether the legal title belongs absolutely to the holder thereof or whether it is held in trust for another. Where an attorney purchases lands in his own name, the extent and nature of his interest can only be questioned by his client or those claiming under the client.

Judgment affirmed.