## Beam, Appellant, v. Gardner.

*Adverse possession—Landlord and tenant.*

The possession of a tenant is the possession of his landlord, and when the relation of the landlord and tenant is once established it cannot be destroyed during the occupancy of the tenant, without express notice to the landlord that the tenant holds adversely.

*Adverse possession—Evidence—Ejectment.*

Where title by adverse possession has been perfected by the possession of the original disseisor and a tenant of his heirs, and there has been no separation of possession by the disseisor or by the tenant, the fact that the heirs of the disseisor after the title has become perfect and after the

death of the tenant, did not include a portion of the land in an ejectment against the heirs of the tenant in which they were successful, or in partition proceedings, is immaterial in an action of ejectment by a purchaser, under the partition proceedings, of the land described in the petition for partition.

*Ejectment—Recovery on strength of plaintiff's title—Exception to the rule.*

As against a defendant in ejectment, who shows no title, and who is to be regarded as a mere intruder, the plaintiff is entitled to recover on showing that his ancestor under whom he claims title as heir died in possession of the premises, and that his possession was continued by a tenant of the heirs until title by adverse possession was perfected.

*Tenants in common—Entry by coheir—Presumption.*

Where one of several heirs enters the land owned in common, the law will presume that he entered in the character of a coheir, and his possession will be that of a coheir.

*Evidence—Record—Purpose of offer—Review—Appeal.*

Where a record is not admissible for the specific purpose stated in an offer, the appellate court cannot say that the trial judge erred in rejecting it, although it might have been admissible for some other purpose.

Argued May 16, 1901.   Appeal, No. 38, May T., 1901, by plaintiff, from judgment of C. P. Butler Co., May T., 1901, No. 96, on verdict for defendant in case of Samuel Beam v. Edward Gardner.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Ejectment for 175 acres of land in Washington township. Before GREER, J.

At the trial it appeared that plaintiff claimed title as purchaser in partition proceedings.   The land belonged to the heirs of James Gardner, who did not accept the allotments. Plaintiff made the following offer:

Plaintiff offered in evidence orphans' court docket No. 1, page 349, being a petition presented to the orphans' court by Jacob McAnallen, administrator of James Gardner, deceased, under whom plaintiff claims title, to sell part of the original tract, to wit: 300 acres for the payment of debts; and for the further purpose of showing who the heirs or children were of James Gardner, deceased, at the time, and under whom the plaintiff in this action claims title; this for the purpose of showing that James Gardner, deceased, died in the actual possession of the land described in the writ, and to be followed by other evidence to the same effect.

Mr. Marshall: The offer is objected to as incompetent and irrelevant.

The Court: I think we will not receive it for the present.

Bill of exceptions sealed. [17]

The facts appear by the opinion of the Superior Court, and by the charge of the court below, which was as follows:

The case you have been sworn to try is an action of eject-ment brought by Mr. Beam, the plaintiff, against Edward Gard-ner, the defendant, to recover 175 acres of land in Washington township, this county, which the plaintiff claims belongs to him. The plaintiff is not in possession. He is out of posses-sion. The defendant is in possession. The plaintiff comes to court to have the defendant put out of possession and have him-self put in.

Now, gentlemen, the rule of law in all civil cases is this, that before the plaintiff can claim a verdict of the jury, he must satisfy the jury by the weight of the evidence as to his right to recover. The plaintiff here claims under the Gardner heirs, James Gardner's heirs, and we say in the outstart that there is no doubt and no trouble as to Mr. Beam's right to claim what-ever the Gardners claimed if they were here. The Gardner interest was partitioned, but not being accepted, was sold at a sale by the sheriff, as trustee, and Mr. Beam, the plaintiff, bought and paid his money, I presume, and took a deed, and that deed gives him the right to claim whatever interest the Gardners could claim, but no more than the Gardners could claim. The deed simply puts the plaintiff, Mr. Beam, into the shoes of the Gardner heirs, so that the contest then, is now in fact between the Gardner heirs and the defendant, Edward Gardner. Had the Gardner heirs a right to recover this land? Were they the owners of it at the time it was partitioned and sold to Mr. Beam? If they were, then Mr. Beam has the right to recover in this case, as he has whatever interest they had in the land.

[Mr. Beam bought the land at this trustee's sale, but when he bought it Mr. Edward Gardner was on it, in possession of it, and claiming it as his; and this was notice to Mr. Beam that Gardner had a claim against the land when he bought, when he paid for it, and when he took his deed he took it with

notice that there was another party claiming the land, the party in possession, who had built the house on it and who was there,] [1] so that Mr. Beam, although he has a deed and although his deed will give him the right to recover the Gardner interest, it gives him no greater interest in the land than the Gardners had. That brings us to consider the question as between the Gardners. James Gardner moved on the tract of 375 acres of land in 1829 or 1830; he built a little house there; he and his family took it and lived in it up until 1832, when he died; his wife remained after him with the children on the land; she stayed in the house and lived there and kept possession of the entire tract, we presume, up until her death in 1842. Up to that time James Gardner and the widow and children had possession of the land for about twelve or thirteen years. They do not claim to have any deed. They do not put in evidence any written title. They do not claim to have paid any purchase money, but the plaintiff claims that they had title by right of occupancy for twenty-one years, and if they show that they occupied this land adversely to everybody else, open and notorious possession against the world, as has been said by one of the judges, if they kept their flag flying, claiming the land for twenty-one years, then the land became theirs. There is no trouble until we come to the death of Mrs. Gardner in 1842. You have twelve or thirteen years' possession, but not enough possession to hold the land; it would have to be twenty-one years; so that at that time there was no title completed under the statute of limitations. Now the plaintiff alleges and offers proof to show that when Mrs. Gardner died in 1842, the sons and daughters, and those who owned the land left it in charge of their uncle, Bernard McAnallen, who was a brother of Mrs. Gardner, and that he remained as tenant, and that he remained there up until 1868, when he died. After Mr. Gardner's death they sold 100 acres off the western side of the tract. This is now owned by William P. Braham, so that left 275 acres. The house that was built by James Gardner and occupied by him and his wife and by Bernard McAnallen, under them was not on this 175 acres; it was on the 100 acres west of it.

[Now, gentlemen, if when Bernard McAnallen entered there on this tract of land, in this house that Mr. Gardner had built

and lived in, the presumption of law is that he would occupy the whole 275 acres. The law presumes he did, and if there is no proof to the contrary, then his possession of that part of the land, if there was no division, gives him possession of the entire tract. That becomes an important question, and in fact is the only question in this case.] [2] After Bernard McAnallen died Mr. Patton Bell and one of the McAnallens claimed that there was 100 acres with the house on that belonged to Bernard McAnallen, their father, and father-in-law of Bell, and they claimed it as theirs. I believe they limited their claim to that 100 acres. There just comes the question in this case: Mr. Gardner's heirs came into court and brought an action of ejectment against these children of Bernard McAnallen, claiming that they owned that, and claiming that Bernard McAnallen was not there claiming for himself, but he started in as a tenant under the Gardners, and until he gives notice to the Gardners that he was not a tenant, that he remained a tenant, and when he died he died as their tenant, and his possession was their possession, and the land that he held was their land held by him as their tenant. This action of ejectment was in 1886; that was decided in favor of the Gardners, and they got possession of this land.

[Now, gentlemen, the question is, was there ever a division of this 275 acres? Was there ever any limit of possession on the part of Bernard McAnallen? Was he always in possession of the entire tract, or did he limit or reduce the extent of his possession to the 100 acres before the twenty-one years would be up; that is, twenty-one years from the date that Gardner went there?] [3] Gardner went there, we will say, in 1829 or 1830; he would have to be there until 1851, to make his title. Up until 1851, was there any line or demarcation? Was there any limit in Bernard McAnallen's claim or possession? Did he possess the entire 275 acres, or only the 100 acres that his children claimed he owned? As I stated, the law presumes when he entered in possession of it, he entered in possession of the entire tract; and the law presumes he held possession of the entire tract until it is shown that he did not hold the possession of the entire tract. How is that as to proof?

[Now, gentlemen, the plaintiff here put in evidence the petition for partition, which shows two distinct tracts of land.

When they partitioned it, it shows 175 acres by itself, and it shows forty acres described by itself, and this forty acres is part of the 100 acres that the McAnallen heirs claimed. Now, evidently, the Gardners recognized a division of this tract when they presented their petition for partition.] [4] When was that made? Was that made before or after the statutory period of twenty-one years from the possession by the original settler? If there was no division made, no limitation in possession of Mr. McAnallen up until after 1851, then under the pleadings and proof, the plaintiff in this case has made out his case and would be entitled to recover the land.

The defendant has offered no proof to show you of any division before that time, so the law would presume there was none up to that time, and if he gained title by statute of limitations, he would hold it the same as title by deed.

[Now, gentlemen, you may inquire in your minds as to why did the Gardners bring their action of ejectment against McAnallen for the 100 acres? Why did they not bring it against him for the whole 275 acres? We do not know. It may be a question that may lead to some thought, and may lead you to what the truth is in the case.] [5]

. [Now, gentlemen, the rule, and it is a long established one, is that where a man is in possession nobody can put him out unless he has a good deed for the land, and it does not make any difference whether Edward is a squatter or not. He has been in possession about nineteen years : two years more if not disturbed, he would have exactly such title as the plaintiff claims under,] [6] [and I may say here in answer to the argument in this case that if Edward was a squatter, his grandfather before him was a squatter, because they do not show any payment of purchase money for the land.] [7] It does not make any difference, if the plaintiff has a title, how he is there. The defendant is attempting to show no title, simply possession for nineteen years, and is living there yet. He has no title by possession; [Edward has not been there long enough to give him title by possession, but he in possession can remain there until the plaintiff comes and shows a perfect title for the land, before the plaintiff can recover.] [8] Now, gentlemen, there was some argument here ; in the first place Mr. Marshall mentioned a matter that ought not to have been mentioned;

Mr. Beam, if he has shown title, is entitled to the possession of his land, and you gentlemen have sense enough to know that you can only decide this case from the evidence, and let nothing go in to prejudice you. Mr. McQuistion was about as far wrong in speaking of this man as being a squatter and intruder. Throw both so far as these things as concerned out of your minds, and [take up the case and determine whether or not up until 1851, Bernard McAnallen had possession of the entire tract or of part of it, because it is admitted he did not live on this tract, but lived on the 100 acres that Patton Bell and the McAnallen heirs claimed on their land.] [9]

Plaintiff presented these points:

2. The evidence being undisputed that Bernard McAnallen entered upon the lands in dispute as a tenant at will of the heirs of James Gardner, deceased, and where such relationship of landlord and tenant is once established, it is presumed to continue as it began, and cannot be destroyed during the occupancy of the tenant without express notice brought home to the landlord that the tenant holds adversely: McGinnis v. Porter, 20 Pa. 80. *Answer:* The fact is for you to determine from the evidence whether or not McAnallen was in possession of the land in dispute; if you so find, this point is affirmed. [10]

4. As against a defendant who shows no title, but is a mere intruder or squatter on the land, and a stranger to the ancestor from whom plaintiff derives title, the plaintiff is prima facie entitled to recover on showing that the ancestor died intestate and in possession of the premises, leaving children in whom the legal title vested and from whom plaintiff derives his title: Mobley v. Brunner, 59 Pa. 481; Jones v. Bland, 112 Pa. 181. *Answer:* If the jury find that Bernard McAnallen had possession of the 175 acres in dispute during the time he had possession of the land on which the house was built, affirmed. [11]

5. If the plaintiff in ejectment claims by descent, it is sufficient for him in the first instance to prove his heirship, and that the ancestor from whom he derives title was the person last seized of the premises in controversy: Jones v. Bland, 112 Pa. 176. *Answer:* If the heirs of James Gardner completed title by statute of limitation and show possession of the entire tract, affirmed. [12]

7. The defendant, being under all the evidence adduced a mere intruder, standing on his possession, is not at liberty to question the partition proceedings in the common pleas court under which plaintiff claims the right of possession. *Answer :* The partition proceedings are not in dispute at all. [13]

8. From all the evidence in this case the verdict should be for the plaintiff. *Answer :* Refused. [14]

Judgment and verdict for defendant. Plaintiff appealed.

*Errors assigned* were (1–14) above instructions, quoting them. (17) Rulings on evidence, quoting the bill of exceptions.

*Levi McQuistion,* with him *J. C. Vanderlin* and *J. H. Wilson,* for appellant.—In an action of ejectment where a party claims title from a person to whom no deed can be found, if the evidence shows that the claimant and his predecessors in title have held exclusive, continued and adverse possession of the land for twenty-one years, a presumption arises that a deed was executed and delivered to the person from whom the party claims title : Hasson v. Klee, 181 Pa. 117 ; Warner v. Henby, 48 Pa. 187 ; Jones v. Bland, 112 Pa. 176 ; Mobley v. Bruner, 59 Pa. 481.

*J. D. Marshall,* with him *T. H. Greer,* for appellee.

OPINION BY RICE, P. J., October 14, 1901 :

This was an action of ejectment for a tract of 175 acres, being part of a larger tract known as lot No. 15 in the Second Donation District containing about 375 acres. The evidence adduced by the plaintiff, if believed by the jury, would have warranted them in finding the following facts : James Gardner was the first settler upon lot No. 15, having gone into possession in 1829 or 1830, claiming to have a conveyance for the entire tract. The fact that he had in his possession what purported to be a deed, or an assignment of a deed for the tract was testified to by his sons, but there was no technical proof of its execution, nor was it produced at the trial. James Gardner built a house upon the tract and died in possession of the entire tract in 1832. After his death the tract, excepting 100 acres sold by his administrator for payment of debts, was occupied by the

widow and children of James Gardner until the death of the former in 1842. After her death Bernard McAnallen, an uncle of the Gardner children, went into possession under an arrangement between him and them by which he was to pay the taxes and clear five acres every year and hold the land for them until the heirs saw fit to dispose of it. Bernard McAnallen occupied the house built by James Gardner from the time he went into possession until the time of his death, which occurred in 1868. In 1890 proceedings were instituted for the partition of the land among the Gardner heirs and those claiming under them which resulted in the sale and conveyance of the land in controversy to the plaintiff.

The possession of a tenant is the possession of his landlord, and where the relation of landlord and tenant is once established, as it was in this case, if the plaintiff's witnesses are to be believed, it cannot be destroyed during the occupancy of the tenant, without express notice to the landlord that the tenant holds adversely: McGinnis v. Porter, 20 Pa. 80. There is not the slightest evidence that Bernard McAnallen ever set up an adverse claim in his own right to any part of the land. Unquestionably, therefore, his possession, if otherwise sufficient, may be tacked to that of James Gardner and his heirs in making out a title by adverse possession in the Gardner heirs. It is urged, however, that although he went into possession as tenant at will of the entire tract remaining after the sale of the 100 acres for payment of debts, yet if, before the expiration in 1851 of the period of twenty-one years from the date of the entry by James Gardner, there was a severance of the 100 acres upon which the house stood from the 175 acres described in this writ, and after such severance McAnallen abandoned possession of the 175 acres, the rightful owner, by such abandonment was placed in the same position, so far as this part of the land was concerned, as he was before James Gardner took possession. Inasmuch as there is no evidence that any one but Bernard McAnallen had possession between 1842 and 1868, the correctness of the foregoing proposition may be conceded: Susquehanna, etc., R. R. Co. v. Quick, 68 Pa. 189. But what evidence is there of a severance, either in title or possession, of the 100 acres from the 175 acres in the lifetime of McAnallen? What evidence is there that he abandoned the possession of

the latter and limited or reduced the extent of his possession. to the former? We are compelled to say there is none. True, in the partition proceedings the 175 acres were treated as a distinct tract, and were not included in the ejectment brought by some of the Gardner heirs against the McAnallen heirs. But as the partition proceedings were not instituted until 1890, and the action of ejectment was not brought until 1886, we fail to see that these facts have any possible relevancy to the question of the nature and extent of Bernard McAnallen's possession between 1842 and 1851. Of course if the plaintiff's right to recover depended upon his proving title in the Gardner heirs by operation of the statute of limitations, it was incumbent on him to prove affirmatively that the possession taken by James Gardner was continued by his heirs and their tenant for the requisite length of time and included the 175 acres in controversy. But even assuming that the case turned solely upon the question of the nature and extent of the possession of McAnallen, and that this question was for the jury, we think there was error in assuming that in determining it they might take into consideration the facts that the land in controversy was described as a distinct tract in the partition proceedings instituted in 1890, and was not included in the ejectment brought in 1886. These facts had no bearing on the question under consideration and the reference made to them in the charge in the connection that such reference was made had a tendency to confuse. Therefore the fourth and fifth assignments of error are sustained.

A broader question is, whether the plaintiff, who acquired all the rights of the heirs of James Gardner, could recover the possession from a mere intruder without proving a perfect title as against all the world. The court held that he could not. The correctness of this ruling is assailed in numerous assignments of error which we need not discuss separately, since they all raise the same question.

In Green v. Kellum, 23 Pa. 254, Mr. Justice WOODWARD said : " According to the oldest principles of the common law, a disseisor has a good possession against everybody but the true owner, and his heir is in by a better right." In Mobley v. Bruner, 59 Pa. 481, the rule was stated as follows by Mr. Justice WILLIAMS, who spoke for the court: " As against the de-

fendant, who showed no title, and who is to be regarded as a mere intruder, the plaintiff was entitled to recover on showing that his ancestor, under whom he claimed title as heir, died in possession of the premises." In Jones v. Bland, 112 Pa. 176; s. c., 116 Pa. 190, Mr. Justice STERRETT said: "While it is undoubtedly true that a plaintiff in ejectment must recover on the strength of his own title and not on the weakness of his adversary's it is not always necessary for him to commence by proving title out of the commonwealth, and then to trace each successive transfer down to himself. If, for example, both parties claim under the same person, there is an implied admission of title in him. In like manner, the fact that defendant acquired his possession as tenant of plaintiff warrants a presumption of title in the latter. Again, if plaintiff claims by descent, it is sufficient for him, in the first instance, to prove his heirship, and that the ancestor from whom he derives title was the person last seized of the premises in controversy. If he claims as devisee, he must in like manner, prove the will and seizin of the ancestor or devisor. The seizin of the ancestor or devisor may be proved by showing he was in actual possession of the premises at the time of his death, or in receipt of rent from the terre-tenant; because possession is presumptive evidence of seizin in fee until the contrary is shown." See also Shrider v. Nargan, 1 Dal. 68, Cook v. Nicholas, 2 W. & S. 27, Hoey v. Furman, 1 Pa. 295, at p. 300, Shumway v. Phillips, 22 Pa. 151, Turner v. Reynolds, 23 Pa. 199, Lair v. Hunsicker, 28 Pa. 115, and 10 Am. & Eng. Ency. of Law (2d ed.), 486. It is unnecessary to cite other authorities. It is undisputed that John Gardner, a son of James Gardner, was living upon the land at the time of the partition proceedings to which he was a party. Edward Gardner, the defendant, is a son of John Gardner. John Gardner moved upon the land about the year 1882 and continued to live there until the time of his death. For a part of the time at least he and his son Edward lived in the same house. It does not appear that Edward had any title whatever to the land or that his possession antedated that of his father, or that from the date of the death of James Gardner until the date of the partition the land was ever in the exclusive possession of any one excepting the Gardner heirs and those in privity with them. We make this statement ad-

visedly, for, after a careful perusal of the testimony, we are convinced that the jury would not have been warranted in finding that John claimed in hostility to his coheirs. The prima facie presumption would be the other way upon the principle thus stated in Mobley v. Bruner, supra: "Undoubtedly his entry would inure to the benefit of his coheirs, not only so far as concerns themselves but as regards strangers. The law would presume that he entered in the character of a coheir; and entering according to his estate, his possession would be according to his estate and would be that of his coheirs: Carothers v. Dunning, 3 S. & R. 373." Nor do we think the jury would have been warranted by the evidence submitted to them in finding that Edward went into possession in hostility to his father; but if having gone into possession with his father, he subsequently set up a hostile claim, his rights thereafter, as against the heirs of James Gardner, were no greater than those of a mere intruder, and if he was a mere intruder the principle of Mobley v. Bruner and Jones v. Bland would apply. It follows that the qualifications given in answer to the plaintiff's fourth and fifth points were inappropriate, and that in view of the peculiar facts of this case, the instructions complained of in the eighth assignment, and other instructions to the same effect, were erroneous.

The court was right in refusing to give binding instructions for the plaintiff. In any view that may be taken of it his case depended upon the testimony of witnesses. It was for the jury to pass on their credibility and to determine from the evidence whether the facts essential to a recovery by the plaintiff were established.

We cannot say that the record referred to in the seventeenth assignment of error was admissible in evidence for either of the specific purposes stated in the offer, namely to show who were the heirs of James Gardner, and to show that James Gardner died in the actual possession of the land. Not being admissible for the specific purposes stated in the offer we cannot say that the court erred in rejecting it, although it might have been admissible for some other purpose, as, for example, to show in connection with other evidence the assertion of dominion over the land after the death of James Gardner. Moreover, the fact that 100 acres of the original tract were sold by the adminis-

trator for the payment of debts was shown otherwise and was practically admitted. So that, at all events, the plaintiff suffered no prejudice by the rejection of the offer. Therefore this assignment is overruled.

Judgment reversed and venire facias de novo awarded.