## Keith's Petition. No. 2.

*Francis H. S. Ede* and *Asher Seip*, for petitioners.
*Smith & Paff*, for respondent.

STEWART, P. J., June 25, 1928.—We granted a rule to show cause why an action of ejectment should not be brought within six months. An answer was filed to the rule, and argument was had, and an opinion was filed on April 9, 1928 [11 D. & C. 530], directing that a replication should be filed, which has since been done, and fixing a day for a hearing. From the evidence taken, we find the following facts:

1. Edward J. Keith and Theresa G. Keith, the petitioners, are now in possession of the premises described in the first paragraph of the petition.

2. These petitioners, on May 2, 1927, entered into possession of the said premises by virtue of a lease from the respondent, John Lewis Groner, to them, wherein he leased the premises to the petitioners for a term of six months from May 1, 1927, at rent of $40 a month.

3. The petitioners paid to the respondent rent for the first two months of the term. Thereupon, a dispute having arisen as to the ownership of the property, petitioners paid rent for one month to Edward Broad.

4. Edward Broad and his wife, on Oct. 7, 1927, conveyed the premises in suit to the petitioners.

## Discussion.

In the opinion first filed we said, referring to the petition, "It is presumably under the Act of March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212." Nothing was said upon the last argument to change that presumption, and it still continues. In Hemphill v. Ralston et al., 278 Pa. 432, the syllabus is: "In proceedings to bring ejectment under the Act of April 16, 1903, P. L. 212, or under the Act of June 10, 1893, P. L. 415, for an issue to quiet title, the proceedings must be instituted by the party in possession, and this finding of fact is jurisdictional and must appear on the record. In neither proceeding is the question of title to be settled in disposing of the rule. If the record does not show which of the parties was in possession, the proceedings will be dismissed. Where the record shows an application for a rule to bring ejectment under the Act of April 16, 1903, P. L. 212, a decree awarding an issue in express terms under the Act of June 10, 1893, P. L. 415, is fatally defective. In such case, the order entered must conform to the case as made out by the pleading and be consistent with the relief prayed for. It seems that an amendment might be allowed in such case to bring the petition and its prayer within the scope of the statute under which assistance is actually sought." It is now earnestly contended that petitioners do not have possession of the premises; that while as a mater of fact they are still conducting a restaurant business on the premises, they went in admittedly under a lease, and that the real possession is in their lessor, who is a respondent herein, and that the rule of law applies that a tenant cannot dispute his landlord's title, and that we cannot separate a tenant's possession from that of his landlord. That rule seems to be well settled in Pennsylvania. In Lessee of Galloway v. Ogle, 2 Binney, 468, the syllabus is: "A tenant cannot resist his landlord's recovery by virtue of an adverse title acquired during his lease." In Boyer v. Smith, 5 Watts, 55, Mr. Justice Kennedy said: "The possession of the tenant or lessee being derived from the lessor under the lease became, immediately upon the expiration thereof, the possession of the lessor, and continued to be so afterwards until the former should make a fair surrender of it to the latter. This possession the lessee was bound to deliver, whether his lessor had a good title to the land or not. It would be against every principle of justice, as well as sound policy, to permit a tenant, either during the term of the lease, as long as he continues to enjoy the land under it or after the expiration thereof, to dispute his landlord's title or right to the possession of the land under any pretence. He is bound not only to surrender the possession at the expiration of the lease, but to pay up all the rent that may be due and in arrear, according to the terms of it. But if he were to be permitted to evade his obligation in this respect by such a juggle as was played here, the rule of law, which has been so wisely established for the protection of landlords or lessors, would be of little or no avail, because it may be practicable, perhaps in every case, for the tenant, at the expiration of his lease, to find a third person who may not only be willing to allege that he has an indisputable title or right to the land, but also willing to give the tenant a new lease of it, as was done here, without allowing the first lessor time sufficient to resume the possession, however anxious he may be to do so." In Thayer v. Society of United Brethren, 20 Pa. 60, the syllabus is: "Where

a lessee at the time of the execution of the lease is not the occupant of the land leased, and he takes possession under and in pursuance of the lease, he cannot claim title to the land without first surrendering the possession. But if the lessee were in possession at the time the lease was executed, he may resist a recovery by proving that he accepted the lease in mistake, or was induced by fraud or misrepresentation to accept it. Without some proof of fraud or mistake, a lease executed when the lessee was in possession of the land is valid, and must be followed by all the incidents of a lease under which the lessee goes into possession. The mere fact that the tenant has a better title than the landlord does not of itself raise the presumption that the lease was a fraud or was accepted through mistake." See, also, McGinnis v. Porter, 20 Pa. 80. In Ward v. Philadelphia, 4 Cent. Repr. 662, the syllabus is: "As a general rule, a lessee is not permitted to impeach or in any way to call in question the title of his landlord, except in cases of fraud, misrepresentation or mistake. If an owner of land is in possession and, with full knowledge of his own title, takes a lease from a stranger, he will not, in the absence of fraud, misrepresentation and mistake, be permitted, during the existence of the term, to assert his own title against his lessor or as a defense to the payment of rent. The same rule applies to a tenant holding over." The general principle is thus well settled, and it may be that the action of the court in making this rule absolute will, upon the trial of the ejectment, result in no real advantage to the petitioners; but that is not the question before us. An examination of many cases shows that almost without exception the lower courts have been reversed because they attempted to decide the law of the case upon a hearing such as this. In one of the latest cases, Heller et ux. v. Fishman et al., 278 Pa. 328, Mr. Chief Justice Moschzisker said: "Even were we to assume (but not decide—for we are as yet ignorant of defendants' answer thereto) the correctness of plaintiffs' contentions as to the manifest invalidity of the tax sale and the effect of Samuel Fishman's warranties of title, and, further, that the trial of this case will develop nothing for a jury to consider, still we would be obliged to hold that a proceeding under the Act of 1903 was the proper course to pursue, for in Canal Co. v. Genet, 169 Pa. 343, 347, we said disputed facts to be passed on by a jury are not essential to the remedy under the act; and that 'the facts required . . . are . . . petitioner's possession and the adversary's denial of his title,' adding, 'when these appear, the issue is to be awarded, and if it should turn out at the trial that the dispute was not over facts, but over the law resulting from them, this would not affect the remedy any more than it would affect an equitable ejectment.' " In Clark v. Clark et al., 255 Pa. 574, the same learned judge said: "In reaching the conclusion just stated, the learned court below overlooked the true intent and purpose of the legislation under consideration, as clearly indicated in the title and by the provisions of the statute now before us. To begin with, the act in question is announced as legislation 'to settle title to real estate,' and the language employed therein plainly shows such to be its real purpose: Spangler v. Trogler, 228 Pa. 217, 226; Foster's Petition, 243 Pa. 92, 95; Mildren v. Nye, 240 Pa. 72, 74; but the provisions of the statute also make it obvious that all issues necessarily involved in the determination of title to the real estate in controversy, are to be settled in the eventual ejectment proceeding contemplated by the act, and not on the rule to show cause why ejectment should not be brought; and so we have recently held in passing upon a like statute: Titus v. Bindley, 210 Pa. 121, 124-125. On this preliminary rule, the inquiry is not to determine who has title to the land in controversy, but whether there is a dispute as to the title between a peti-

tioner in actual possession and a respondent out of possession, who claims or has 'an apparent interest in or title to the real estate.' Counsel for the plaintiff very tersely and correctly sum up the situation at bar thus: 'The appellant presented to the proper court her petition alleging the jurisdictional facts, as required by the Act of April 16, 1903, P. L. 212, and a rule issued. The respondents, appellees, in answer to the rule, did not deny any jurisdictional fact averred in the petition, but alleged in substance that, under the will of her husband and the laws of the Commonwealth of Pennsylvania, the petitioner acquired only a life estate in the land, and that they are the owners thereof, subject to her life estate, and, because of her life estate, they cannot bring an action of ejectment, as they are not entitled to possession.' " He then goes on to refer to numerous decisions of the Supreme Court which are confirmatory of the limited question which is now before the court. It is useless to amplify this discussion.

And now, June 25, 1928, rule heretofore granted on Feb. 27, 1928, is made absolute, and John Lewis Groner is directed to bring his action of ejectment within six months from Feb. 28, 1928, the date of service of said rule upon him. In default thereof, judgment will be entered under the provisions of the 2nd section of the Act of March 8, 1889, P. L. 10.

From Henry D. Maxwell, Easton, Pa.

NOTE.—Ward v. Philadelphia, 4 Cent. 662, is also reported 18 W. N. C. 561.