do so, and such stranger would not have been liable to pay the appellants for the reason that he never undertook to do so. See Atkinson v. Schoonmaker et al., 12 Mo. App. 425.

PER CURIAM, May 9, 1910:

We concur in the view expressed in the opinion of Judge ENDLICH, on which we affirm the judgment appealed from, that there was not an adoption by the receiver of the contract between the plaintiffs and the Keystone Wagon Works, as a continuing contract, but merely the use by him of orders received by the corporation before his appointment. The plaintiffs' claim for orders procured for and accepted by the corporation was complete at the time of the appointment of the receiver and for it they have the same remedies as other creditors.

The judgment is affirmed.

---

## Spangler v. Trogler, Appellant.

*Ejectment—Rule to bring ejectment—Disputed title—Possession—Act of March 8, 1889, P. L. 10.*

1. Where a person by himself and his predecessors has been in actual possession for over seventy years, of a cleared portion of a warrant, and has by the cutting of timber or other acts been in possession in the remaining portion of the warrant which is uninclosed and unimproved woodland, such possession of the woodland is sufficient to give the person so holding it a right to a rule upon a person claiming the record ownership, to bring an action of ejectment within six months as provided by the Act of March 8, 1889, P. L. 10, and its supplements.

2. In such case the right of the petitioner to the rule is not defeated by the fact that he holds title subject to an agreement to reconvey on a future happening.

Argued March 7, 1910. Appeal, No. 153, Jan. T., 1909, by defendant, from order of C. P. Franklin Co., Sept. T., 1906, No. 83, making absolute rule to bring

ejectment in case of Henry Spangler and D. W. Faust v. William A. Trogler. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition for rule to bring ejectment.

A. O. SMITH, P. J., specially presiding, filed the following opinion:

This is a proceeding brought under the provisions of the Act of assembly passed March 8, 1889, P. L. 10, as amended by the Act of April 16, 1903, P. L. 212. The petitioners presented their petition April 30, 1906, alleging title in fee simple to a certain tract of timber land situate in Warren township, Franklin county, Pennsylvania, containing eighty-eight acres and 114 perches, and alleging the lawful possession of the same under their claim of title; also that defendant, William A. Trogler, who was not in possession of said tract, claimed an interest or title thereto, and praying for a rule upon the said respondent, William A. Trogler, to bring his action of ejectment within six months or show cause why the same cannot be so brought. To this rule defendant filed his answer September 17, 1906, setting up a complete and consecutive paper title from the commonwealth of Pennsylvania to himself for the land in controversy. Said answer alleged that the land claimed was uninclosed and unimproved woodland and that the plaintiffs did not have possession of the same, so as to bring themselves within the terms of the act of assembly under which the proceeding was commenced. Upon replication being filed both sides proceeded to take testimony. This testimony is very voluminous and much of it was perhaps not relevant to the particular controversy involved in this rule, for the reason that this is not a trial of an action of ejectment but simply a proceeding to determine whether or not the court has jurisdiction under the facts to compel the defendant to bring his action.

From this testimony we find the following facts as

material and applicable to the consideration of the issue joined:

1. The petitioners, Henry Spangler and D. W. Faust claim title and right of possession to the land in controversy, together with other lands, by virtue of a deed from John Fritz, dated May 14, 1904, and recorded in the recorder's office in Franklin county. This deed is absolute on its face and under it the petitioners took possession and commenced cutting timber until stopped by proceedings brought against them by the respondent in this rule.

2. In connection with the said deed, and on the same day, an agreement was entered into between John Fritz of the one part, and D. W. Faust, afterwards joined in by Henry Spangler, of the other part, the terms of which are as follows, in full:

"Whereas the said John Fritz has this day conveyed to Henry Spangler and D. W. Faust a tract of timber land situate in Warren township aforesaid, containing one hundred and thirteen acres and seventy-nine perches of land for the consideration therein mentioned but which said sum of money has not yet been paid, but said conveyance has been made for the purpose of enabling said Faust and said Spangler to exercise and enjoy the full and complete control and management of said tract of land so long as any timber remains thereon and after the timber on said land has been cut and removed from the premises in accordance with the terms of this agreement the said Faust and Spangler for themselves and for their respective heirs agree for a nominal consideration, to reconvey the same tract of land mentioned herein to the said John Fritz or to his heirs.

"The price at which the timber on said land is sold to said D. W. Faust is Twenty ($20.00) Dollars per acre the number of acres to be determined by a survey which is to be made as soon as practicable by S. V. Wingert, county surveyor, or by some other surveyor whom the parties hereto may mutually agree upon. No cleared

land is to be calculated in said survey in determining the number of acres of timber land to be paid for by said Faust as herein set forth, and it is estimated that the number of acres of timber land will not exceed one hundred. Payments for said timber shall be made as follows: $150.00 to be paid said Fritz when the first fifty tons of bark have been removed from the land, an additional $150.00 to be paid when the balance of the bark on said tract of land has been peeled and removed from the land $200.00 to be paid when 50,000 feet of lumber have been removed, and $200.00 to be paid upon the removal of each and every subsequent 50,000 feet of timber until the whole price herein agreed upon for said timber shall have been paid for in full, and in case there should still be a balance due said Fritz when all of said bark and timber have been removed from the land, the said Faust agrees to settle in full for the same under the terms hereof within sixty days after the last of the timber in said land has been removed.

"Said Fritz further agrees that he will save harmless the said Faust and Spangler in any law suit that may be prosecuted or instituted against them by any person or persons whomsoever claiming or to claim any part, parcel or interest in or to the land herein mentioned and will pay all costs and expenses of the said Faust and Spangler or either of them incident to the defense or prosecution of any claim against or by them respecting this land or the timber thereon, and said Faust is hereby authorized to expend the first moneys due said Fritz for bark or timber in the defense or prosecution of such suit or suits in case the same be deemed necessary. It is understood and agreed that all the cleared land on this tract shall be used, occupied and enjoyed by said Fritz in the same manner as he now uses the same.

"The cost for recording the deed for the land herein named and of writing and executing the papers connected therewith are to be paid by said Faust out of the first money in his hands available for that purpose and to be

deducted from the price to be paid by said Faust to said Fritz for timber."

3. That the land in dispute, together with other lands, in all containing 204 acres and twenty-four perches, was obtained by the vendor of the petitioners, viz., John Fritz on February 28, 1876, under proceedings in partition in the orphans' court of Franklin county on the estate of his father, Jacob Fritz, who died March 4, 1874, and that from that time until the date of sale to the petitioners John Fritz was in the open, notorious and visible possession of the said 204 acres and used the same as one property.

4. That the said 204 acres and twenty-four perches embraces two original warrants, namely, the Ramsey warrant, dated August 22, 1785, containing seventy-two acres and 106 perches and allowance, surveyed December 5, 1789, and the Frederick Long warrant, dated October 19, 1792, surveyed October 28, 1794, containing 111 acres and 111 perches and allowance, as shown by the certificates from the land office at Harrisburg.

5. That said Ramsey and Long warrants had been in the possession of Jacob Fritz, father of John Fritz and of Jacob Fritz's father, also named Jacob Fritz, for a long period of years; and that the whole thereof, consisting of 204 acres and twenty-four perches and allowance, has been used by the Fritz family for all of said period as one property, a large portion thereof being cleared by them and used as a farm, the balance of the said 204 acres and twenty-four perches consisting of the woodland now in dispute and which was mostly situated upon the Frederick Long warrant. Although open, uninclosed and unimproved, it was used by the said Fritzs for two or three generations for the general purposes of the farm, in making fences, shingles, timber and firewood. That Jacob Fritz, 2d, father of John Fritz, was a cooper by trade and cut over the whole tract of woodland now in dispute from time to time, for the purposes of his trade in securing stave timber.

6. That lying within the boundaries of the Frederick Long warrant are three or more cleared fields, each of six or more acres, irregularly carved out of the said Long warrant on its western side next to the Ramsey warrant, and that so far as the said cleared land is concerned there is no contest as to the open, notorious and uninterrupted possession by the Fritzs, predecessors in title of the petitioners.

7. That this dispute arises by reason of the interference of the Ramsey and Long warrants with a warrant in the name of Charlotte Carlile, dated August 24, 1785, surveyed November 11, 1785, for 323 acres, forty-two perches and allowance, and which warrant embraced within its boundaries most, if not all, of the said Ramsey and Long warrants; respondent William A. Trogler, offered in evidence what is claimed as a complete consecutive paper title to the whole of the Charlotte Carlile warrant. From which fact, mainly, respondent contends to have the title and right of possession of the uninclosed and unimproved woodland of the Frederick Long warrant embraced within the bounds in which the said Long warrant interferes with the Carlile warrant.

8. That in the lifetime of Jacob Fritz, 2d, some time during 1870 or 1871, George W. Wolf and other, the immediate predecessors in title of the respondent, William A. Trogler, cut certain timber on the land in dispute whereupon an action of trespass was brought against them by Jacob Fritz to No. 238, April Term, 1871. That Jacob Fritz died before the case came to trial and his heirs at law were substituted upon the record as plaintiffs, and that the record in said case shows that judgment was confessed by the defendants in favor of the plaintiffs September 14, 1875, for $350 and costs. It was also alleged in testimony, and not disputed, that this confession of judgment was the result of a settlement whereby the defendants not only agreed to pay the above sum but agreed to quitclaim to the heirs of Jacob Fritz the land in controversy, but no quitclaim deed or other conveyance is offered to show that said purpose was carried out.

9. After said settlement and confession of judgment aforesaid, on September 17, 1875, a petition was presented in the orphans' court of Franklin county for an inquisition on the real estate of Jacob Fritz, deceased, which inquisition was subsequently, on December 2, 1875, held on the land by the sheriff, and among the jurors summoned by the sheriff to appraise the land in dispute, inter alia, as the property of Jacob Fritz, was George W. Wolf, the immediate predecessor in title of the respondent, also Hiram Y. Reese, one of the predecessors in title of George W. Wolf to the land in dispute. It also appears in testimony, in the deed offered, that when Hiram Y. Reese conveyed the property now claimed by the respondent to Emmert and Nesbitt, predecessors in title to George W. Wolf, grantor stated that he did not warrant title to eighty-eight acres and seventy-nine perches and allowance lying east of Little Cove road, being the land now in dispute.

10. It also appears from the testimony offered, that from the time the action of trespass was instituted against Wolf and others, in 1871, until the time of his death in 1896, the said Wolf exercised no acts of ownership over the timber land in controversy, and several witnesses were called on behalf of the petitioners to show that he told parties not to cut timber on said land as it was not his timber. After the death of George W. Wolf the land in dispute was included in the deed made by his executors to the respondent for a large portion of the Charlotte Carlile warrant.

11. That the respondent, himself, is not shown by the testimony to have exercised any acts of ownership over the timber land in controversy for many years after his purchase and until after the purchase of the timber by the petitioners, Spangler and Faust, and after they had commenced cutting thereon. Respondent, William A. Trogler, then brought an action of ejectment to No. 23, February Term, 1905, and filed his declarations therein in which it is averred that the present petitioners are

now in actual possession of the premises now in dispute. This action of ejectment, after being put at issue, was discontinued by the plaintiff, and in the summer of 1906, respondent purchased fencing wire and attempted to erect a fence between the cleared fields of the Long warrant belonging to the farm of John Fritz and the uninclosed woodland, which fence was at once destroyed by the petitioners.

12. We find as a fact that the said D. W. Faust and Henry Spangler, petitioners, were in actual possession of the said timber land in dispute, consisting of eighty-eight acres and 114 perches, from the time of their purchase of said tract from John Fritz, for the purpose of cutting and removing therefrom the timber purchased by them by virtue of the conveyance hereinbefore recited, and that they were thus in the actual possession of the same at the time of the institution of this proceeding.

13. That the respondent, William A. Trogler, at the institution of this proceeding was not in the actual possession and control of any portion of the eighty-eight acres and 114 perches of woodland in dispute, and that neither he nor his predecessors in title had ever been in lawful possession of the same for any purpose.

### CONCLUSIONS OF LAW.

1. We find, as a matter of law, that John Fritz, predecessor in title to the petitioners, as also Jacob Fritz, his predecessor, were bona fide in possession of the woodland now in dispute under color of the title within the meaning and terms of the act of March 8, 1889, as amended by that of April 16, 1908.

2. That there is not sufficient dispute of the actual possession of the petitioners in this case to oust the jurisdiction of the court under and by virtue of the said acts, or to compel the petitioners to resort to the provisions of the act of June 10, 1893, in order to settle the controversy as to title between the parties.

3. That the written agreement of May 14, 1904, entered into contemporaneously with the deed from John Fritz to the petitioners, does not defeat the right of possession vested in the petitioners by virtue of the deed of even date. Without construing it at length, its legal effect is, first, an agreement to reconvey the land to Fritz after the cutting and removal of the timber by the petitioners; second, to fix and make certain the terms of payment for the timber to be cut and removed; third, to cast upon John Fritz, the grantor in the deed given, the burden of defending his title, which burden by virtue of this agreement is probably no greater than that provided for by the warranty of his deed.

As we construe the whole transaction, the legal effect of the deed was to vest in Faust and Spangler whatever right of possession and title to the tract named may have been held, claimed or owned by John Fritz. The contemporaneous agreement, in its preamble, recites the purpose of the deed as being to enable Faust and Spangler "to exercise and enjoy the full and complete control and management of said tract of land so long as any timber remains thereon," and this purpose involves an absolute right of possession. There is nothing in the further clauses of the agreement which can be construed to minimize, lessen or defeat this absolute right of possession vested in the petitioners for whatever of possession and control over the timber land had been previously enjoyed by John Fritz.

### DISCUSSION OF LAW AND FACTS.

This proceeding is under the Act of March 8, 1889, P. L. 10, which was first amended by the Act of May 25, 1893, P. L. 131, and later by the Act of April 16, 1903, P. L. 212, which amendments, however, are not necessary to be considered here. The act is entitled, "An Act to settle title to real estate," and in our judgment should receive a fair and liberal construction and not receive such a narrow construction as to defeat the purposes of

the act. There is, of course, a similar Act dated June 10, 1893, P. L. 415, which can be used where the title to property is disputed and to compel settlement of titles. The two acts have a common purpose, viz., settlement of title to real estate, but the provisions of the acts show that they are intended to take effect under different circumstances.

This proceeding being admittedly under the act of 1889, the question is, What are the jurisdictional facts necessary to put the case within the terms of that act? The language of the act is, "Whenever any person not being in possession thereof shall claim or have an apparent interest in or title to real estate, it shall be lawful for any person in possession thereof claiming title to the same to make application to the court," etc. Two facts then must appear to give jurisdiction, first, possession by plaintiff or petitioner claiming title, that is, having color of title; and, second, a claim of title by the other party out of possession. In the petitioner or plaintiff there must be two things, possession and claim of title. As is said by Judge LINDSEY, in Welsh's Petition, 13 Pa. Dist. Rep. 498: "The possession of a mere intruder, or squatter, without color of title or claim thereto, would probably not be entitled to the benefit of the act." It is not, however, necessary to decide that the plaintiff's title is a good one. All that is necessary is that there is possession under some claim or color of title: Fearl v. Johnstown, 216 Pa. 205; Welsh v. Clough, 216 Pa. 276, reversing Judge LINDSEY in Welsh's Petition, 13 Pa. Dist. Rep. 498.

In this case, as we have found, the Fritz family, grandfather, father and son, have been in the actual possession of the land covered by the two warrants, the James Ramsey and the Frederick Long, containing in all 204 acres clearing over one-half of the said 204 acres during the last seventy years and farming it. The cleared land actually farmed extended not only over the Ramsey warrant but for a considerable distance over the line between

the two warrants into the Frederick Long warrant. In the action of ejectment brought by respondent against the petitioners in 1905, the description in the pleadings notches out the cleared fields of the Fritz farm extending into the Long warrant and simply describes that which they claim is woodland only, uninclosed and unimproved. So in this proceeding petitioners describe only the uninclosed and unimproved woodland. Both proceedings recognize and concede that there was the actual possession by clearing and farming of the cleared fields of the Long warrant so that even if there was not an actual possession by cutting of timber upon the woodland there would yet be the constructive possession of the woodland following the possession of a part of the Long warrant as farm land under a claim of title.

This is the well-recognized law of Pennsylvania as shown by a great many decisions. As is said in the syllabus to Ament's Executor v. Wolf, 33 Pa. 331, "In case of interfering surveys if the owner of the younger title enter upon and occupy a part of his tract and use the uninclosed woodland within the lines of his survey as woodland is ordinarily used this is not a constructive, but an actual possession of the woodland and would give title thereto under the statute of limitations, notwithstanding the entry by the owner of the elder survey upon another portion of his tract. The constructive possession which the law attributes to the legal title is ousted by such use of the woodland; and an actual entry by the owner of the elder title upon another part of his tract is not sufficient to vest the possession in him as against the occupier under the younger survey." The same principles respecting actual and constructive possession under different conditions and facts appear in Hole v. Rittenhouse, 37 Pa. 116; Burke v. Hammond, 76 Pa. 172; Williams v. Beam, 196 Pa. 341, and many other cases.

In this case for a long period of years it is clear from the testimony that the Fritzs used the entire Long warrant including the woodland in dispute along with their

other farm land for general farm purposes; also that Jacob Fritz, 2d, was a cooper and cut a considerable portion of the large timber on the tract for the purposes of his trade. The surveyor and a son of the respondent both testified to the fact that stumps, as many as six to the acre, having been cut for a number of years, showed over the entire tract. We think, therefore, we were justified in finding as a fact that there was a possession, either actual or constructive, in the predecessors of petitioners in the possession and claim of title to the woodland in controversy. It is also equally clear that there can be no·question that there is a claim or color of title at least in the Fritzs, and the only question remaining is one raised by the admission of the agreement between petitioners and Fritz contemporaneous with the deed to petitioners. It is earnestly contended by counsel for respondent, that the effect of this agreement is to oust the jurisdiction of the court in this matter, owing to the fact there is no title in petitioners, taking the deed and the agreement together as one paper. We do not agree with this contention. The agreement of course to some extent limited the conveyance to petitioners, in that it is an agreement to reconvey the land after the timber is stripped off. The title, therefore in Spangler and Faust, is subject to the terms of this agreement. It in no sense, however, defeats the right of actual possession, and ejectment is a possessory action only.

For the purpose of settling all controversies between the parties, the respondent can bring his action against not only the petitioners but against John Fritz as well. The fact that Spangler and Faust have not paid John Fritz is wholly immaterial to the respondent. Neither is the fact that John Fritz by this agreement undertakes to bear all the expenses of litigation of any consequence to this controversy or any impeachment of the possessory right conveyed to petitioners. Both these facts are important as between John Fritz and Spangler and Faust but are matters with which respondent has nothing to do

and we cannot see that it in any way interferes with the right of petitioners to bring this action.

Upon the whole case, therefore, we think that there is here presented a case clearly within the terms and conditions of the act of 1889 and its supplements, and that this rule should be made absolute.

### DECREE.

Now, April 22, 1908, the rule heretofore granted upon William A. Trogler "to bring his action of ejectment within six months from the service of such rule upon him or to show cause why the same cannot be so brought" is hereby made absolute, and the said respondent is hereby given six months from the date of this decree in which to bring said action of ejectment before being subject to the provisions of the act of 1889 and supplements respecting judgment thereon. All costs of this proceeding on the rule to show cause to be paid by the respondent. Exception noted for William A. Trogler, respondent, and bill sealed.

*Error assigned* was the order of the court.

*William S Hoerner,* with him *Walter & Gillan,* for appellant.

*J. R. Ruthrauff,* of *Ruthrauff & Nicklas,* and *O. C. Bowers,* with them *H. H. Spangler,* for appellees.

PER CURIAM, May 9, 1910:

The judgment is affirmed for the reasons stated in the opinion of Judge SMITH, specially presiding.