Robin *v.* Brown et ux.

124

Argued April 28, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Joseph M. Smith,* with him *Edwin S. Ward* and *Albert W. Sanson,* for appellant.—It is submitted that the facts were sufficient to establish an actual, adverse, continued, visible, notorious, distinct and hostile possession thereof for the full period of twenty-one years: Camp Chicopee v. Eden, 303 Pa. 150, 156; Thompson v. Coal Co., 133 Pa. 46; Laskowski v. Raucheisen, 100 Pa. Superior Ct. 428.

Of course, it is not necessary that these present defendants show a full 21-year possession; their possession may be tacked on to the Wisters and the whole counted together: Covert v. Ry. Co., 204 Pa. 341; Overfield v. Christie, 7 S. & R. 173.

Where two parties occupy land on each side of a line fence, each claiming the land on his side as his own, after 21 years their respective titles become incontestable, even though the line be incorrect: Brown v. M'Kinney, 9 Watts 565; Reiter v. McJunkin, 173 Pa. 82.

*R. A. White, Jr.,* with him *Stanley B. Rice* and *M. W. Sloan,* for appellee.—The decisions which recognize that a party can acquire title by adverse possession by the simple expedient of maintaining fences alone around the ground, required that such a fence must be of a real and substantial nature so as to shut out the rest of the world and to indicate to the real owner of the ground that the person who has occupied it by means of such a fence refuses to allow anyone upon the ground and does actually, by the means of the fence, physically prevent other persons or animals from entering it: Patton v. Hooks, 61 Pa. Superior Ct. 320.

OPINION BY MR. JUSTICE MAXEY, May 26, 1932:

The question in this case is the sufficiency of evidence to maintain title by adverse possession to a triangular piece of land whose sides are in length 158 feet on 18th Street, 221 feet on Ogontz Ave., and 155 feet on Old Thorp's Lane, Philadelphia. The plaintiff in these eject-

ment proceedings had the paper title and brought action against the defendants, Brown and wife, who claimed possession by themselves and through their predecessors since 1880. The Garfield Building Association, mortgagee, was allowed to intervene. The jury found for defendants. The court entered judgment n. o. v. in favor of plaintiff, holding the evidence of adverse possession insufficient. The sole question before us is whether or not the evidence offered by defendants was sufficient to justify its submission by the court to the jury.

"In Pennsylvania the rule is, that when there are a given state of facts, which are admitted or distinctly proved, whether the possession is adverse or not, is a question of law; but in a doubtful case the truth of the facts must be submitted to the jury": Rung v. Shoneberger, 2 Watts 23, 27.

"To give title under the statute of limitations, the possession of the disseisor must not only be actual but it must be visible, notorious, distinct, hostile and continued for the period of 21 years": Martin v. Jackson, 27 Pa. 504, 510.

"The disseisor 'must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest.' He must intend to hold the land for himself, and that intention must be made manifest by his acts. It is the intention that guides the entry and fixes its character. No particular act, or series of acts, is necessary to demonstrate an intention to claim ownership. Such a purpose is sufficiently shown where one goes upon the land and uses it openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner. The owner is, of course, chargeable with knowledge of what is openly done on his land and therefore calculated to attract attention. But a mere passive possession without intending to claim the property, is insufficient, regardless of the length of time it continues, or however open, notorious, or exclu-

sive it may have been": 1 R. C. L., section 7, page 693. "The inclosure of land is undoubtedly evidence of possession, and, either of itself or in connection with other acts of ownership, may be sufficient on which to base an adverse claim. ...... Where inclosure is essential, or is relied upon as the evidence of possession, it must, to be effective, be complete and so open and notorious as to charge the owner with knowledge thereof. The inclosure should also be appropriate to fit the premises for the purposes to which they are adapted, or for which the occupant may desire to use them. ...... If the natural, together with the artificial, barriers used, are sufficient clearly to indicate dominion over the premises, and to give notoriety to the claim of possession, it is sufficient to put the statute of limitation in motion. The question in such cases is whether the inclosure, like other acts of possession, is sufficient to 'fly the flag' over the land, and put the true owner upon notice that his land is held under an adverse claim of ownership": 1 R. C. L., section 11, page 698.

"Where an inclosure is relied on to establish adverse possession, it must be of a substantial character, so as to be a protection against outside interference in adapting the premises to some suitable use. An inclosure of the land by felling trees and lapping them one upon another, or by the erection of a brush fence, or an inclosure by stakes, or the maintenance of a fence which is 'crooked, rickety and dilapidated,' or stretching around a twenty-five hundred acre tract one barbed wire nailed to trees and saplings and a few posts at about four feet from the ground, and under the barbed wire two strands of telephone wire, is not sufficient": 2 C. J., section 15, page 62.

In this case defendants attempted to prove their adverse possession for twenty-one years of the property in dispute as actual, visible, exclusive, hostile and continuous, and offered testimony as to a fence around this piece of land. The fence upon which they rely as proof

of their open and adverse possession is rather an unsubstantial one. One of defendants' witnesses described the fence as follows: "The posts were there but the wire sort of left the posts." Another of defendants' witnesses described the fence thus: "It was an old fence, with cedar posts, there was a wire fence there but some of the wires were broke down." The same witness was asked: "Was there a fence down on Ogontz Avenue?" (Ogontz Avenue being one of the boundaries of the land in dispute.) He answered: "Not that I remember." This witness also testified that he "supposed" anybody used the lot in controversy "that wanted to use it." He was asked: "Did you see people using it, walking across, and kids playing there?" He answered: "Yes." He described the triangular piece of land in dispute as "an open lot" and he was then asked the following questions and made the following answers: "Q. When you say an open lot, you mean a lot that wasn't fenced in or anything like that, don't you? A. Everything was open there. Q. Everything was open there? It was a big field there, wasn't it? A. The sewer went down through there and there was a dump there. Q. It was a big dump, wasn't it? A. Yes. Q. Dump wagons had no trouble getting in and out of there when they wanted to dump, did they? A. No. Q. Ice wagons went in there, didn't they? A. Yes."

Brown, the defendant, testified he purchased the property in dispute, in 1920. He said: At that time the Olney Avenue front was inclosed in its entirety and the western or 18th Street boundary was cedar posts and the Ogontz Avenue was "a fence broken down here and there." He described the fence as "cedar posts and wire," and declared that "outside of the breakage it covered the whole triangle." He said further that he filled or had filled this ground west of Ogontz Avenue in 1923 or 1924. He was then asked this question: "At the time you began to fill in there, what did you do, if anything, about the fence that was along the west side of

your property?" He answered: "Wherever the fence was down we took the posts out." After the fill was completed to the established grade he said he "put a fence around the whole property." This was done in 1925 or 1926.

We have in this case a triangular piece of land which no one made any particular use of for four decades, being a kind of neighborhood dumping ground and commons, which was entirely uncultviated and which defendants are now attempting to claim ownership of by adverse possession based upon a dilapidated unsubstantial fence which did not at all times entirely inclose the property.

It is well settled that he who asserts title by adverse possession must prove it affirmatively. This court said in DeHaven v. Landell, 31 Pa. 120, at 126: "Where a party relies on the statute of limitations, as giving him a positive title, one with which he can successfully assail even the holder of the legal title in possession, he ought to be held to show all the elements constituting it, conjoined and united in his hands; and that he, or those under whom he claims, entered into the possession of the premises, claiming the same as and for his own property, and that as such he has held actual, adverse, continued, visible, notorious, distinct, and hostile possession thereof, for the full period of twenty-one years. ...... A court should, in case of such a title, see that there is evidence to go to the jury on all these points. If it be wanting as to any of them, then an essential of title is wanting, and the duty of the judge is plain. He should instruct the jury that there is not sufficient evidence to entitle the plaintiff to recover." See Johns v. Johns, 244 Pa. 48, 56.

In the case before us, defendants and their predecessors in title made no use whatever of the land now claimed. In the absence of an open and notorious actual use of land claimed by adverse possession, the claimant must show that it was so substantially and visibly fenced

in and the fence was so continuously and substantially maintained for at least twenty-one years as to amount to an assertion "against the world" of his exclusive private ownership of that area of the earth's surface. A fence which has the appearance of being neglected and abandoned and which is not even complete falls short of supporting an aggressive assertion of adverse ownership of the land within its lines. There was nothing in the character, appearance or care of the fence described in this case which would indicate to the title owner of the land thus "fenced" that some stranger to the title was claiming hostile dominion over it. A fence described by claimants' own witnesses as an "old fence whose wires were broke down" or "sort of left the posts" would scarcely suffice as a "standard of conquest" of an "invading disseising enemy."

If a fence such as is relied on in this case to support defendants' claim, is legally adequate for that purpose, any person could secure title by adverse possession to unused land by simply erecting a make-believe fence around it and maintaining that semblance of fence for twenty-one years. As the authority cited in this opinion puts it, a fence adequate to support a claim of adverse possession "must be of a substantial character, so as to be a protection against outside interference in adapting the premises to some suitable use."

The evidence offered by the claimants in this case falls short of proving the twenty-one years' actual, visible, notorious, hostile and continuous "against-the-world" possession pleaded.

The judgment for plaintiff n. o. v. was proper.

The judgment is affirmed.