592 A.2d 83

**Merle B. SUTTON and Alice Sutton, and L. Edward Delos and Beatrice Sutton Delos, Appellees,**

**v.**

**Paul MILLER and Betty J. Miller, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1991.

Filed June 4, 1991.

216

[redacted]

Raymond H. Bogaty, Grove City, for appellants.

Donald P. Graham, Evans City, for appellees.

Before TAMILIA, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

Appeal is taken from a final decree in Equity awarding appellees, through adverse possession, fee simple title to a parcel of land adjoining appellants' lot. In addition, appellees received mandatory injunctive relief compelling appellants to replace appellees' fence (previously removed by appellants) at a location where it had remained from 1957–1985. With modification, we affirm.

The relevant facts as found below by the Honorable George Kiester, S.J., specially presiding, are as follows: Appellees, Edward Delos, et ux., are the current owners of a parcel of land located in Clay Township, Butler County (co-appellees Sutton are the former owners of the Delos lot and are responsible for commencing the instant litigation). Appellants, Paul and Betty Miller, own an adjoining parcel. Without the aid of a survey, sometime between 1953–1957 the Suttons constructed a fence dividing the lots. Comprised of electrified barbed wire and locust and steel posts, the fence was built for the purpose of pasturing cattle on the Sutton property—the fence being within eyesight of the Miller residence. Thereafter, between 1957–1985 the Millers repeatedly verbalized disagreement concerning the propriety of the Sutton fence, as located, as demarcating the true boundary line between the lots. Nevertheless, apart

from a letter sent in 1957 by appellants' attorney express-ing the Millers' dissatisfaction with the location of the fence, and apart from numerous verbal protestations by the Millers, the Millers never initiated legal proceedings to resolve the boundary dispute. In 1985 they did, however, remove the Sutton fence (without the Suttons' consent) and replace it with another fence located pursuant to a survey conducted by W.J. McGarvey, R.P.E., the differential repre-senting the disputed property herein.

■ On September 24, 1985, appellees instituted action by filing a Complaint in "Law *and* Equity" entitled: "Com-plaint in Civil Action—Action to Quiet Title *and* Complaint in Equity—Injunction." [1] The Complaint, after recounting the Millers' removal of the Sutton fence and construction of a second fence, and after setting forth a claim of adverse possession for 21 years, states at "Count I, Quiet Title":

That an Action and [sic] ejectment will not lie ... WHEREFORE, showing the above, the Plaintiff prays this Honorable Court to enter a decree as follows:

a. That the title of the Plaintiff in the above described property be adjudicated and decreed valid and indefeasi-ble as against all rights or claims whatsoever ...

b. That the Court decree that the Defendant's, their heirs, successors, assigns, and all other interested parties are forever barred from asserting any right, title, lien, interest, or claim in the land inconsistent with the owner-ship of the Plaintiff, unless the Defendants bring an Action and [sic] Ejectment against the Plaintiff within 30 days after the entry of an judgment of this Court, and if no such action is undertaken by the Defendant's, their heirs, successors, assigns, personal representatives or

---

1. Consonant with our general aversion for piecemeal litigation, where complainant pleads a cause of action in Quiet Title and, in addition, prays for injunctive relief, a court of Equity properly may resolve both the legal and equitable causes. *See, e.g., MacKubbin v. Rosedale Memorial Park, Inc.,* 413 Pa. 637, 198 A.2d 856, 857 (1964); *White v. Young,* 409 Pa. 562, 186 A.2d 919, 921-22 (1963). Were this not the rule, two separate actions, one at Law and one in Equity, would be necessary to afford complete relief.

any other interested parties within the 30 day period, then said Defendant's . . . shall be forever barred from asserting any right, title, interest, claim or lien in the land inconsistent with the interest and claim of the Plaintiffs herein.

Complaint at 7–8. "Under Count II, Injunction", appellees requested, *inter alia,* that appellants replace their fence at its original location and remove the fence constructed by appellants in 1985. *See id.* at 11.

Appellants demurred to and moved to strike off the Complaint submitting (and this was conceded by appellees in their Complaint at 9–11) that they were in possession of the disputed parcel whereby making the action in Quiet Title the improper form of action. *See* Preliminary Objections at 3. After hearing, appellants' motions were denied by order of February 19, 1986. The case proceeded to trial and, as already noted, the court entered a final decree in favor of appellees.

Appellants frame two issues for our review:

I. Whether the evidence was sufficient to support appellees' award of adverse possession;

II. Whether the trial court improperly denied appellants' preliminary objection in the nature of demurrer to appellees' action in Quiet Title?

Turning first to the second issue, we find erroneous the lower court's failure to dismiss pursuant to appellants' timely preliminary objection in the nature of demurrer. However, as we find the final decree properly sustainable under a alternative form of action—an action in Ejectment—we will *sua sponte* amend appellees' pleadings and affirm the decree with modification.

## I

The present-day action in Quiet Title is best understood as viewed through the window of its historical development. In time long past, and generally before the turn of the century, a plaintiff's exclusive remedy to remove a cloud on

his or her title was through the filing of the equitable bill *quia timet. See generally* 13 Std.Pa.Pract.2d, Ejectment and Quieting Title § 159 (1957). Thereafter, during the mid-to-late 1800's and early 1900's, the Pennsylvania General Assembly, through statute, supplanted the former practice in equity and created a remedy at law to include all equitable jurisdiction encompassed by the former bill *quia timet* (plus additional causes of action to settle title to real estate not formerly encompassed by the equitable bill). *See generally* Pa.R.C.P. 1455(1)–(30) (listing various statutory actions); 3 Goodrich–Amram 2d §§ 1061(b):2—1061(b):4. In 1946, an effort to consolidate the form and procedure followed in these separate statutory actions (which often called for different procedures), yielded Pennsylvania Rules of Civil Procedure 1455[2] and 1061[3] *et seq.* These Rules provided for a new *form of action*—the action to quiet title. *See White v. Young,* 409 Pa. 562, 186 A.2d 919, 921 (1963) (purpose of Rules 1061 *et seq.* was to unify into one procedure all the diverse procedures by which clouds on title were formerly tried); *Bruker v. Burgess and Town Council,* 376 Pa. 330, 102 A.2d 418, 420 (1954) ("The action to quiet title is a new form of action, created as a consolidation

**2. Action to Quiet Title**

The following Acts of Assembly are suspended insofar as they apply to the practice and procedure in actions to quiet title ... [listing various Acts (1) to (30)].

**3. Conformity to Civil Action. Scope**

(a) Except as otherwise provided in this chapter, the procedure in the action to quiet title from the commencement to the entry of judgment shall be in accordance with the rules relating to a civil action.

(b) The action may be brought

(1) to compel an adverse party to commence an action of ejectment;

(2) where an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge or any document, obligation or deed affecting any right, lien title or interest in land;

(3) to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land; or

(4) to obtain possession of land at a judicial or tax sale.

of a large number of independent actions and proceedings, mostly statutory, designed to remove clouds on title....");
*see also Kalyvas v. Kalyvas*, 371 Pa. 371, 89 A.2d 819 (1952) ("Although the action [under Pa.R.C.P. 1061] is an action at law it embraces all the equitable jurisdiction which was formerly exercisable under a bill quia timet."); *cf. MacKubbin v. Rosedale Memorial Park, Inc.*, 413 Pa. 637, 198 A.2d 856, 857 (1964) ("the action at law to quiet title does not *completely* displace general equity jurisdiction") (emphasis in original).

What must be kept in mind is that Pennsylvania's Rules of Civil Procedure do not, and cannot, abridge, enlarge or modify substantive rights and jurisdiction established by statute. Hence, the enabling authority for Rules 1455 and 1061, 17 P.S. § 61 (repealed), provided, in pertinent part:

> [T]he Supreme Court of Pennsylvania shall have the power to prescribe by general rule the forms of actions, ... pleadings, and motions, and practice and procedure in civil actions at law and in equity ... [p]rovided that such rules shall be consistent with the Constitution of this Commonwealth and shall neither abridge, enlarge or modify the substantive rights of any litigant nor the jurisdiction of any of the said courts, nor affect any statute of limitations.

17 P.S. § 61 (repealed), *replaced by*, 42 Pa.C.S.A. § 1722(a); *Nosal v. Nosal*, 410 Pa. 304, 189 A.2d 262 (1963); *see also Warehouse Builders and Supply v. Perryman*, 215 Pa.Super. 413, 257 A.2d 349, 352 (1969) (Rules of Civil Procedure clearly limited in scope to practice and procedure). As a necessary corollary, the substantive rights and statutory jurisdiction established by the various Acts of Assembly (creating the legal action in Quiet Title) survived consolidation under the Procedural Rules which modified practice and procedure *only*. *See Seven Springs Farm, Inc. v. King*, 235 Pa.Super. 450, 344 A.2d 641, 644 (1975) ("The provisions of [the Act of March 8, 1889, *see infra* note 4, 12 P.S. § 1543, giving to plaintiff in possession a cause of

action against defendant out of possession by compelling defendant to assert his interest through bringing an action in ejectment] were suspended as to practice and procedure by Pa.R.C.P. 1455[17] and superceded in that respect by Pa.R.C.P. 1061–1066. The substantive requirements of the Act, however, continue to remain in force."); *see also Schimp v. Allaman*, 353 Pa.Super. 232, 509 A.2d 422, 423 (1986).

More recently, through the Judiciary Act of 1976, 42 Pa.C.S.A. § 1722, **Adoption of administrative and procedural rules,** our Assembly has preserved this policy of leaving inviolate the substantive rights and statutory jurisdiction established by 12 P.S. § 1543 (in particular; *see infra* ), repealing 12 P.S. § 1543 *only insofar* as inconsistent with the general rules proscribed pursuant to 42 Pa. C.S.A. § 1722(b). *See* Judiciary Act Repealer Act, 42 Pa. C.S.A. § 20001 *et seq.* (Supp. Act 1978–53, H.B. 825).

■ Our analysis begins with a recognition of the standard through which an objection in the nature of demurrer is assessed, to-wit: a demurrer is a preliminary objection that the pleadings fail to set forth a cause of action upon which relief can be granted *under any theory of law. See Packler v. State Employers' Retirement Board*, 470 Pa. 368, 368 A.2d 673 (1977); *Balsbaugh v. Rowland*, 447 Pa. 423, 290 A.2d 85 (1972); *cf. Weiss v. Equibank*, 313 Pa.Super. 446, 460 A.2d 271 (1983) (burden is on court to identify legal theories underlying complaint). The issue becomes whether plaintiffs, below, set forth a cause of action in Quiet Title under any legal theory.

Plaintiffs pleaded the unavailability of an action in ejectment and, therefore, brought their action under Rules 1061(b)(1) ("to compel an adverse party to commence an action of ejectment") and 1066(b)(1) (upon granting plaintiff relief pursuant to Rule 1061(b)(1), court "shall order that the defendant be forever barred from asserting any right, lien, title or interest in land inconsistent with the interest or claim of the plaintiff set forth in his complaint, *unless* the defendant takes such action as the order directs with (30)

days thereafter....") (emphasis added). *See* Plaintiffs' prayer for relief set forth *ante* at 85. A review of the substantive portions of the Act herein relevant,[4] consolidated under Rule 1061 as to form and procedure, reveals that there exists a substantive right of action granted to a plaintiff in possession to compel a defendant out of possession to bring an action in ejectment against the plaintiff.

When a statute creates a cause of action including a designation of who may sue (here, a plaintiff in possession) then a plaintiff's possession becomes a jurisdictional prerequisite to an action thereunder.[5] *See, e.g., Girard Trust Co. v. Dixon,* 335 Pa. 253, 6 A.2d 813 (1939) ("The existence of possession on the part of the petitioner at the time of the institution of the proceeding [under 12 P.S. § 1543] is an essential jurisdictional fact"); *Hemphill v. Ralston,* 278 Pa. 432, 434, 123 A. 459 (1924) ("In each instance [under, *inter alia,* 12 P.S. § 1543] the proceeding must be instituted by the one in possession, and the finding of this fact is jurisdictional...."); *cf. Mildren v. Nye,* 240 Pa. 72, 78, 87 A. 607 (1913) (under 12 P.S. § 1545, "there must be possession to give the court its purely statutory jurisdiction ..."). In fact, the scope of a proceeding brought under Rule

4. 12 P.S. § 1543 (repealed insofar as inconsistent with 42 Pa.C.S.A. § 1722(b), *see* 42 Pa.C.S.A. § 20001 *et seq.*) states, in pertinent part: Whenever any person, not being in possession thereof, shall claim or have an apparent interest in or title to real estate, it shall be lawful for any person in possession thereof, claiming title to the same, to make application to the court of common pleas of the proper county, whereupon a rule shall be granted upon said person not in possession, to bring his or her action in ejectment....

5. We do not here intimate that possession is a jurisdictional prerequisite in all actions instituted under Rule 1061. Where a plaintiff is out of possession, *but where an action in ejectment does not lie,* an action under Rule 1061(b)(2) has been found proper. *See, e.g., Grossman v. Hill,* 384 Pa. 590, 122 A.2d 69, 71 (1956) (proceeding under Rule 1061(b)(2) where plaintiffs out of possession are mere equitable owners without right to immediate exclusive possession); *Brennan v. Shore Brothers, Inc.,* 380 Pa. 283, 110 A.2d 401, 402–03 (1955) (proceeding under Rules 1061(b)(2)–(3) where plaintiff-lessor is out of possession and presently maintains no right to immediate possession); *see generally* 3 Goodrich–Amram 2d § 1061(b):1 (compilation of various statutory remedies consolidated under Rules 1061(b)(2)–(3) (1976)).

1061(b)(1) is narrow, limited solely to a determination of whether "the Court has jurisdiction under the facts [established by plaintiff's possession] to compel the Defendant to bring his action [in ejectment]." *Schimp v. Allaman*, 353 Pa.Super. 232, 509 A.2d 422, 423–24 (1986) (quoting *Spangler v. Trogler*, 228 Pa. 217, 218, 226, 77 A. 495 (1910) (answering the question of "what are the jurisdictional facts necessary to put the case within the terms of [12 P.S. § 1543] ... first, possession [in] plaintiff ... and, second, a claim of title by the other party out of possession")); *see also Seven Springs Farm, Inc. v. King*, 235 Pa.Super. 450, 344 A.2d 641, 644, 643 n. 4 (1975) ("the merits of the dispute, the title and right to possession, are not determined in an action brought under [Rules 1061(b)(1) and 1066] ... [t]he issue is merely who is in possession for purposes of bringing an action in ejectment...."); *Hoffman v. Bozitsko*, 198 Pa.Super. 553, 182 A.2d 113, 115 (1962).

The case of *Buck v. Brunner*, 167 Pa.Super. 142, 74 A.2d 528 (1950), is directly on point. There, we affirmed, per curiam, the dismissal of a complaint in Quiet Title:

Plaintiffs' complaint avers in Paragraph 4, that the defendant 'erected a fence approximately 20 feet over the line from his property and on the said property of [plaintiff] claiming the said 20 foot strip along the westerly side of said property of [plaintiff] as his own.' This shows that the possession of the disputed strip of land is in defendant. In such a case the plaintiff must bring an action in ejectment [*Mildren v. Nye*, 240 Pa. 72, 87 A. 607.] It is only where the plaintiff is in possession of land against which a person not in possession makes claim or asserts the title, that an action to quiet title will lie: Rule[s] 1061 [to 1066] of the Procedural Rules [12 P.S. Appendix].

*Id.* 167 Pa.Super. at 142, 143, 74 A.2d at 528.

■ Plaintiffs commenced the instant litigation to prove title in a disputed parcel of land by adverse possession, and, further, to quiet such title as against defendants. The pleadings conclusively established defendants' possession of

the disputed parcel.[6] The lower court, however, denied defendants' objection as to possession and proceeded to the merits of the action. This was legal error. Since plaintiffs were out of possession, the court not only exceeded the scope of an action brought under Rule 1061(b)(1), *see Seven Springs, supra,* but, in so doing, enlarged plaintiffs' substantive rights defined by statute and exceeded the court's statutory jurisdiction in a proceeding to Quiet Title. *See Girard Trust, supra.* The demurrer was improperly denied.

██ Nonetheless, there was available to plaintiffs an alternate *form of action* upon which similar relief could have been granted—an action in Ejectment—and while the action in Quiet Title should have been dismissed, it should have been dismissed with leave to amend. *See* Pa.R.C.P. 1033 ("A party, either by filed consent by the adverse party or by leave of court, may *at any time* change the form of action, correct the name of a party or amend his pleading...") (emphasis added); *see also Harley–Davidson Motor Co., Inc. v. Hartman,* 296 Pa.Super. 37, 442 A.2d 284, 286 (1982) (leave to amend proper "where there is some reasonable possibility that amendment can be accomplished successfully"). Unfortunately, the stage of the proceedings where this might have been possible has long since evanesced. We are left, therefore, with the remaining option of *sua sponte* amending the pleadings to include an action in Ejectment.[7] Finding no prejudice to appellants' rights in choosing this route, *see Pilotti v. Mobil Oil Corp.,* 388 Pa.Super. 514, 565 A.2d 1227 (1989), and in recognition of the well-settled principle that amendment is available at any stage of the proceedings, *see Taylor v. Kaufhold,* 368 Pa.

**6.** In fact, Judge Kiester in a Supplemental Opinion found the following: "[t]he facts establish that Plaintiffs could have properly initiated [the] action by the Ejectment procedure claiming that Defendants evicted him from the land by erecting the fence." Trial Court Supp. Opinion at 3.

**7.** Equitable subject matter jurisdiction remains proper. *See supra* note 1.

538, 84 A.2d 347, 351 (1951), "as a nod to formalism, the proper amendment will be considered to be made." *Id.*

## II

■■■■ Depending upon with whom present, actual possession of a disputed parcel lies, a claimed title to land by adverse possession is properly instituted in an action to Quiet Title or an action in Ejectment. *See, e.g., Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 545 A.2d 926, 928 (1988) (en banc) (ejectment action brought by adverse claimant seeking possession of land allegedly encroached by defendant); *Castronuovo v. Sordoni,* 357 Pa.Super. 187, 515 A.2d 927 (1986) (quiet title action brought by adverse claimants asserting present possessory interest); *Seven Springs, supra* (same); *see generally* 22 Std.Pa.Pract.2d § 120:170 (1984). Ejectment is a possessory action wherein a plaintiff must prove the right to exclusive possession vis-á-vis proof of paramount title. *See Doman v. Brogan,* 405 Pa.Super. 254, 263, 592 A.2d 104, 108 (1991). The elements of Pennsylvania's law to prove title through adverse possession are stated in *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 66 A.2d 828 (1949):

> It has long been the settled rule of this Commonwealth that one who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years: *Parks v. Pennsylvania R.R. Co.,* 301 Pa. 475, 152 A. 682; *Johns v. Johns,* 244 Pa. 48, 90 A. 535; *Boyer v. Lengel,* 224 Pa. 357, 73 A. 323. Each of these elements must exist, otherwise the possession will not confer title: *Groft v. Weakland,* 34 Pa. 304.

*Id.* 66 A.2d at 829.

Appellants' argument contra adverse possession distills to the following:

> The Miller position is that *permissive* use no matter how long it may continue cannot be considered adverse. [citation omitted]. If the original possession, as in this case,

the original placement of the fence, is permissive, *with the understanding that a survey would need to be conducted at some point,* the mere passage of time, however long, would not convert this *permissive* possession into an adverse or *hostile* one.

. . . . .

The ongoing complaints of Miller, the discussion with all parties concerned, the nature of the land and all of the facts would indicate that the property was not obtained by adverse possession since it was not a *hostile* taking but rather the fence existed *in Miller's mind* until a survey could be obtained to establish the right property line.

Appellants' Brief at 11–12 (emphasis added).

 Recently, the elements of adverse possession have been refined (not redefined) so as to create a presumption that where "all other elements of adverse possession have been established, hostility will be implied, regardless of the subjective state of mind of the trespasser." *Tioga Coal v. Supermarkets Gen. Corp.,* 519 Pa. 66, 546 A.2d 1, 5 (1988) ("it is inconceivable that if an adverse possessor actually takes possession of land in a manner that is open, notorious, exclusive and continuous, his action will not be hostile to the true owner of the land . . ."); *see also Schlagel v. Lombardi,* 337 Pa.Super. 83, 486 A.2d 491, 494 (1984) (Pennsylvania follows the majority rule in that "a sufficiently notorious possession will always be enough to alert an owner[;] . . . hostility is implied if all other elements have been established") (citing *Lyons v. Andrews,* 226 Pa.Super. 351, 313 A.2d 313, 316–17 (1973)). Where, however, possession is held *under* rather than *against* the record title holder it cannot ripen into title.[8] Upon this belief we have held that where a sufficiently notorious possession exists to alert the "true" owner of an adverse claim, it will then be

---

8. With whom record title to the disputed parcel rested was not litigated. We note, however, that for purposes of an action involving a claim of adverse possession, an alleged adverse possessor "always claims in derogation of the right of the true owner, admitting that the legal title is in another." 3 Am.Jur.2d, Adverse Possession § 9 (1986).

incumbent upon said owner to establish "permissive" use. *See Waltimyer v. Smith,* 383 Pa.Super. 291, 556 A.2d 912, 914 (1989) (citing cases). Satisfaction of the requisite elements of adverse possession, and the issue of "permissive" use, are questions of fact for, in this instance, the Chancellor and will not be reversed on appeal unless marked by a clear abuse of discretion or an erroneous application of the law. *See Sterner v. Freed,* 391 Pa.Super. 254, 570 A.2d 1079, 1081 (1990).

 Where, as here, appellants concede that plaintiff-appellees' possession was open, notorious, exclusive and continuous,[9] hostility will be implied. *See Tioga, supra.* At this point, the burden shifts to appellants to prove that use was not hostile, but permissive. *See Sterner,* 391 Pa.Super. at 260, 570 A.2d at 1082; *see also Waltimyer,* 383 Pa.Super. at 295–296, 556 A.2d at 914.

Fundamentally, appellants misconceive the test of "permissiveness" (and "hostility"), even though their suggestion that possession cannot be hostile where it is "permissive" is unquestionably sound. To begin, appellants make the bald assertion that placement of the fence was "with the understanding that a survey would need to be conducted at some point." No such oral understanding or agreement was found by the Chancellor, and correctly so, as this claim is thoroughly belied by the record. Not only was there lacking an acknowledgment by appellees of superior title in appellants, *see Masters v. Local Union No. 472, United Mine Workers,* 146 Pa.Super. 143, 22 A.2d 70, 72 (1941) (acknowledgment conclusively establishing permissive use), but rather appellees at all times believed ownership to the disputed parcel was in them. Appellees' claim as to the fence demarcating the proper boundary, despite appellants' repeated complaints, belies any claimed recognition that they were holding at sufferance to appellants' rights.

---

**9.** Appellants concede, therefore, the "substantiality" of the Sutton fence prior to removal. *See Dimura v. Williams,* 446 Pa. 316, 286 A.2d 370, 371 (1972) (citing *Robin v. Brown,* 308 Pa. 123, 162 A. 161, 163 (1932)) (fence must be *substantial* to support claim of adverse possession of lands enclosed thereby).

Moreover, we are at pains to understand how appellants can in one breath argue both permissive possession by appellees and, at the same time, argue that appellants have continuously registered complaints concerning appellees' possession, but to no avail.

Turning to appellants' argument against a finding of "hostility" because "the fence existed *in Miller's mind* until a survey could be obtained to establish the right property line," we simply note that to the extent the test of hostility focuses on intention, it is with appellees' intention not appellants'. *See Schlagel v. Lombardi*, 337 Pa.Super. 83, 486 A.2d 491, 494 (quoting *Vlachos v. Witherow*, 383 Pa. 174, 118 A.2d 174, 177 (1955)) ("While the word 'hostile' has been held not to mean ill will or hostility, it does imply the intent to hold title against the record title holder."); *see also Robin v. Brown*, 308 Pa. 123, 162 A. 161 (1932).

In sum, today we reaffirm that property rights are defined by law; appellants' failure to seek *legal* recourse within the statutory period, *see* 42 Pa.C.S.A. § 5530, amounts to *legal* acquiescence in the superiority of appellees' rights in the parcel. The Chancellor appropriately found "hostility" present, as well as a failure by appellants to prove "permissive" use.

Accordingly, the final decree is affirmed with modification to reflect that appellees, in Ejectment (as amended), have proved superior title to the disputed parcel through adverse possession and are entitled to immediate possession. That portion of the decree awarding mandatory injunctive relief remains unchanged.

Decree affirmed with modification.

TAMILIA, J., concurs in the result.