622 A.2d 378

**Walter A. PALAC and Bridget M. Sambrick, Appellees,**

v.

**James and Kathleen DISANTO, Appellants.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1993.

Filed March 25, 1993.

Leigh P. Narducci, Blue Bell, for appellants.

William J. O'Brien, II, Philadelphia, for appellees.

Before McEWEN, POPOVICH and BROSKY, JJ.

POPOVICH, Judge.

Appeal is taken from a final decree awarding the Plaintiffs/Appellees,[1] through adverse possession, fee simple title to a parcel of land claimed as the Defendants/Appellants' property. We affirm.

The relevant facts as found below by the Honorable Lawrence A. Brown are as follows: The Plaintiffs–Palac and Sambrick each purchased lots on either side of the 50' × 166.5' parcel owned by William and Petronella Smolinski in 1951 and 1956, respectively.

On July 18, 1957, the Plaintiffs entered into a tripartite agreement with the Estate of Petronella Smolinski and a developer, Melvin L. Savitz. The agreement made reference to the 50–foot strip lying between the Plaintiffs' properties; to-wit:

> WHEREAS, a search by Title Abstract Company of Pennsylvania disclosed that [the Plaintiffs] are the owners of land adjacent to the property in question and that there does exist in their favor a right-of-way over the land to be conveyed, BEGINNING at a point in the center line of Colwell Road, seven hundred feet, measured South forty-four degrees fifty-eight minutes West from a point in line of land now or late of Frank Wilmer, containing in front or breadth on said Colwell Road fifty feet and extending of that width in length or depth South forty-six degrees forty minutes East one hundred sixty-six and five-tenths feet, Being the bed of a proposed road as shown on plan and

---

1. Walter A. Palac and Bridget M. Sambrick are the only party-plaintiffs despite their spouses being referenced in the facts of the case—the spouse of the former is deceased while the latter is divorced.

survey [2] made by Will D. Hiltner, Registered Surveyor, in August, 1952. . . .

Additionally, the parties agreed that, in conjunction with the execution of the sale between Smolinski and Savitz or his nominee, the Plaintiffs would, for a consideration of $1.00, execute a quitclaim deed in favor of the Smolinski Estate with respect to all right, title and interest in the described right-of-way. Further, the contract recited that Savitz would, within one year of the date of the agreement and five hundred dollars (10% of which was paid by the Plaintiffs), convey the parcel to the Plaintiffs.

However, by deed dated July 24, 1957, the Smolinski Estate conveyed the property to Whitehill Construction Company (Savitz' nominee), which transferred it to Savbran Construction Company in September of 1957. These transfers included the 50–foot property at issue. Thereafter, in 1967, Jasper & Ruth DiSanto purchased the property from Savbran. They, in turn, sold it to their nephew Raimondo in September of 1973. Upon his death, his widow sold the property to the Defendants/Appellees, James and Kathleen DiSanto.

It was not until 1971, according to the Plaintiffs, that it was learned that the Defendants' predecessor in title was seeking a variance from the zoning board of Conshohocken, Montgomery County and voiced their opposition on grounds that they owned the property under the terms of the 1957 agreement. Despite their protestations, the variance was granted and the Plaintiffs were advised by the board that resolution of legal ownership of the property would have to occur in a court of law.

It was not until June 22, 1988, that the Plaintiffs had a summons in equity issued seeking to quiet title to the real estate. A complaint followed and alleged that within one year of the July 18, 1957, agreement the Plaintiffs took "posses-

2. Even if, *arguendo,* the property were "dedicated" as a street, there is no evidence that the property was "accepted" by a governmental body as a roadway within 21 years of its "dedication". As such, adverse possession is applicable to acquire title. See *Pistner Bros. Inc. v. Agheli,* 359 Pa.Super. 177, 518 A.2d 838, 839 (1986).

sion" of the parcel and continued to exercise control over it by various notorious acts; namely:

> We filled in. We brought in top soil, graded it. We put fertilizer, seeding, and I have been maintaining that land all the way through since then to today.

> \* \* \* \* \* \*

> The road bed was lower. It had gravel. It was a gravel road bed and we scraped some of the gravel we could out of there and then we brought topsoil, approximately twelve inches. And at the rear of the property, is approximately two feet of dirt.

> We graded it to the grade levels of our properties. We brought in fertilizer and fertilized it. We seeded it and maintained it.

N.T. 6/12/91 at 19.

In reply, the Defendants testified to giving the Plaintiffs written notice of trespass in 1969 and 1981, the former of which was denied being received. The Plaintiffs testified that they never ceased and desisted using the parcel as their own, and never saw the Defendants enter onto the lot to assert ownership.

■ On appeal, the Defendants question whether the trial court erred in finding that the Plaintiffs were entitled to ownership of the property by adverse possession, claiming that the element of "hostility" had not been established.

In Pennsylvania, the elements necessary to prove title through adverse possession were listed in *Conneaut Lake Park v. Klingensmith*, 362 Pa. 592, 66 A.2d 828, 829 (1949):

> It has long been the settled rule of this Commonwealth that one who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years[.] Each of these elements must exist, otherwise the possession will not confer title[.] [Citations omitted]

Recently, the elements of adverse possession have been refined so as to create a presumption that where "all other elements of adverse possession have been established, hostility

will be implied, regardless of the subjective state of mind of the trespasser." *Tioga Coal v. Supermarkets Gen. Corp.,* 519 Pa. 66, 546 A.2d 1, 5 (1988).

Instantly, we have an abundance of evidence to satisfy all prongs of the adverse possession test: 1) One year after the 1957 agreement, the Plaintiffs took steps, in light of Savitz' failure to transfer legal title to them, to take possession of the plot; 2) The Plaintiffs had planted a garden in the rear of the lot since 1952, which they continued to cultivate post–1957; 3) Trees were planted on the lot; 4) The gravel road bed was removed to a depth of 12″ and replaced with topsoil; 5) The lot was leveled to the height of the adjoining properties; 6) Grass was planted and cut; and 7) A trailer, boat & vehicles were kept on the property.

Moreover, the 1957 agreement divested the Plaintiffs (by quitclaim deed) of any interest they may have thought they had in the property. Thus, when they took possession of the property, they did so against someone they believed was the *legal* title owner—Savitz. See *Sutton v. Miller,* 405 Pa.Super. 213, 592 A.2d 83, 91 (1991).

It was not until 1971 that the Plaintiffs learned that the rightful title was possessed by the Defendants' predecessor. Yet, the Plaintiffs continued in their "hostile" actions by refusing to terminated their "occupation" of the property. In fact, according to the Defendants, the Plaintiffs' persistent behavior of utilizing the lot as a parking/storage area prompted letters in 1969 and 1981 voicing their displeasure with the occupation of the lot by the Plaintiffs. No removal or cessation was forthcoming from the Plaintiffs, nor did either Plaintiff recall seeing the Defendants or their predecessors come to the situs of the problem to protest the occupation or break the continuation of "possession" by placing any indicia of ownership at the site.

Therefore, we are in accord with the trial court's finding that "[t]he evidence is uncontroverted that the Plaintiffs have been in actual, continuous, visible and notorious possession of th[e] property" for over twenty-one years. Trial

Court Opinion at 5. Moreover, because the Plaintiffs' possession was "open, notorious, exclusive and continuous, hostility may be implied." See *Tioga,* supra. As such, the burden shifts to the Appellants to prove that the use was not hostile, but permissive. See *Sutton,* supra.

From our review of the Appellant's testimony, the evidence is not sufficient to sustain their burden of proving "permissive" use by the Plaintiffs. The fact that they had to forward letters to the Plaintiffs voicing their displeasure with the unauthorized use of the lot is indicative that the Plaintiffs' presence was not authorized. It was at odds with the interests of Defendants and their predecessors in interest.

Consequently, in sum, we hold that the trial court did not err in holding that there was sufficient evidence of adverse possession to establish legal title in the Plaintiffs.[3] *Id.*

Order affirmed.

McEWEN, J., concurs in the result.

---

**3.** *Pistner Bros. Inc. v. Agheli,* 359 Pa.Super. 177, 518 A.2d 838 (1986), is cited by the Defendants to buttress their request that the lower court's order on adverse possession be reversed.

Instantly, unlike *Pistner,* we have a scenario in which a parcel was used by no one other than the Plaintiffs. In fact, the Plaintiffs removed gravel from the bed of the lot, replaced it with topsoil and seed, leveled the ground to be even with the adjacent properties, planted a garden and trees, mowed the lawn and used the plot for parking their vehicles.

In *Pistner,* "[o]thers were still able to use [the dedicated] Street for its intended purpose." *Id.* at 182, 518 A.2d at 840. At bar, once the 50-foot strip of land between the Plaintiffs' properties was graded and seeded, there was not testimony that it continued to be used to gain access to any of the Smolinski Estate. As a result, we do not find *Pistner* to be controlling.